# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

*In re:*

85 FLATBUSH RHO MEZZ LLC, 85 FLATBUSH RHO HOTEL LLC, 85 FLATBUSH RHO RESIDENTIAL LLC,

Debtors.

---

85 FLATBUSH RHO MEZZ LLC, 85 FLATBUSH RHO HOTEL LLC, 85 FLATBUSH RHO RESIDENTIAL LLC,

Appellants,

v.

TH HOLDCO LLC,

Appellee.

---

Appeal from the United States Bankruptcy Court for the
Southern District of New York, Bankr. Case No. 20-23280 (SHL)

## BRIEF FOR DEBTORS-APPELLANTS

LEECH TISHMAN
ROBINSON BROG PLLC
A. Mitchell Greene
875 Third Avenue
New York, NY 10022
(212) 603-6300

*Counsel for Debtors-Appellants*

# TABLE OF CONTENTS

**FEDERAL RULE OF BANKRUPTCY PROCEDURE 8012 DISCLOSURE STATEMENT** .................................................................. 1

**INTRODUCTION AND SUMMARY OF ARGUMENT** ........................... 3

**JURISDICTIONAL STATEMENT** ........................................................ 6

**STATEMENT OF ISSUES** ................................................................... 6

**STATEMENT OF THE CASE** ............................................................... 8

**STANDARD OF REVIEW** .................................................................. 25

**ARGUMENT** ...................................................................................... 27

**I. THE BANKRUPTCY COURT ERRED IN OVERRULING THE DEBTORS' CONFIRMATION OBJECTION AND ENTERING THE CONFIRMATION ORDER BEFORE FINAL ADJUDICATION OF THE ADVERSARY PROCEEDING.** .................................................. 27

**II. THE BANKRUPTCY COURT ERRED IN OVERRULING THE DEBTORS' CONFIRMATION OBJECTION AND ENTERING THE CONFIRMATION ORDER FINDING THAT THE TH HOLDCO PLAN WAS PROPOSED IN "GOOD FAITH" WITHIN THE MEANING OF SECTION 1129(A)(3) OF THE BANKRUPTCY CODE** ............................... 35

**III. THE BANKRUPTCY COURT ERRED IN ENTERING THE CONFIRMATION ORDER FINDING TH HOLDCO WAS A GOOD FAITH PURCHASER UNDER 363(M) OF THE BANKRUPTCY CODE** . 42

**IV. THE BANKRUPTCY COURT ERRED IN OVERRULING THE DEBTORS' CONFIRMATION OBJECTION AND ENTERING THE CONFIRMATION ORDER WITHOUT FIRST HOLDING A HEARING TO ESTABLISH THE VALUE OF THE DEBTORS' PROPERTY AND DETERMINING THE ALLOWED AMOUNT OF TH HOLDCO'S SECURED CLAIM** ............................................................................. 46

**V. THE BANKRUPTCY COURT ERRED IN ENTERING THE CONFIRMATION ORDER WITHOUT PROVIDING THE DEBTORS WITH AN OPPORTUNITY TO CONFIRM THEIR OWN PLAN OF REORGANIZATION AND CONSIDERING THE PREFERENCES OF THE DEBTORS' CREDITORS AND EQUITY SECURITY HOLDERS IN ACCORDANCE WITH 11 U.S.C. § 1129(C)** ............................... 51

**CONCLUSION** ................................................................................... 54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Argo Fund Ltd. v. Bd. of Dirs. of Telecom Arg., S.A. (In re Bd. of Dirs. of Telecom Arg., S.A.),*
528 F.3d 162 (2d Cir. 2008) ............................................................................ 36, 30

*BDC Fin., LLC v. Metaldyne Corp. (In re Metaldyne Corp.),*
421 B.R. 620 (S.D.N.Y. 2009) ......................................................................... 42

*Cadle Co. II v. PC Liquidation Corp. (In re PC Liquidation Corp.),*
383 B.R. 856 (E.D.N.Y. 2008) ......................................................................... 28

*In re Charter Commc'ns, Inc.,*
691 F.3d 476 ..................................................................................................... 25

*Citicorp Sav. V. Oliver (In re Oliver),*
183 B.R. 87 (Bankr. W.D. Pa. 1995) ............................................................... 50

*D.A.N. Joint Venture v. Deoki,*
1999 U.S. Dist. LEXIS 12974 (S.D.N.Y. Aug. 20, 1999) ............................... 50

*In re Dark Horse Tavern,*
189 B.R. 576 (Bankr. N.D.N.Y. 1995) ............................................................ 31

*Deutsche Bank AG v. Metromedia Fiber Network (In re Metromedia Fiber Network, Inc.),*
416 F.3d 136 (2d Cir. 2005) ............................................................................. 29

*In Re Ditech Holding.,*
2019 WL 4073378 (S.D.N.Y. August 28, 2019) .............................................. 44

*East 44th Realty, LLC v. Kittay,*
2008 U.S. Dist. LEXIS 7337 (S.D.N.Y. Jan 23, 2008) .................................... 29

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.,*
873 F.3d 85 (2d Cir. 2017) ............................................................................... 25

*In re Gross,*
2022 Bankr. LEXIS 600 (Bankr. D.N.J. Mar. 7, 2022) ................................... 50

*In re Holley Garden Apts., Ltd.,*
238 B.R. 488 (Bankr. M.D. Fla. 1999) ............................................................ 53

4856-1494-2766, v. 6

*Huebner v. Midland Credit Mgmt., Inc.,*
   897 F.3d 42, 53 (2d Cir. 2018) ...................................................... 26

*In re Koelbl,*
   751 F. 2d 137 (2d Cir. 1984) ........................................................ 36

*In re Landmark Park Plaza Ltd. P'ship,*
   167 B.R. 752 (Bankr. D. Conn. 1994) ........................................ 52

*In re Lehman Bros. 3 Holdings Inc.,*
   855 F.3d 459 (2d. Cir. 2017) ....................................................... 25

*Licensing by Paolo, Inc. v. Sinatra (in re Gucci),*
   126 F.3d 380 (2d Cir. 1997) ................................................... 42, 43

*Lifschultz v. Lifschults Estate Mgmt. LLC (In re Lifschultz Estate
   Mgmt. LLC),*
   No. 18 CV 1962 (VB), 2019 BL 102905 (SDNY March 25, 2019) ........................ 43

*In re Lionel L.L.C.,*
   2008 Bankr. LEXIS 1047 (Bankr. S.D.N.Y. Mar. 31, 2008) .................. 37

*In re Mid-State Raceway, Inc.,*
   343 B.R. 21 (Bankr. N.D.N.Y. 2006) .......................................... 53

*Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v.
   Official Comm. of Unsecured Creditors of LTV Steel Co. (In re
   Chateaugay Corp.)(Chateaugay I),*
   988 F.2d 322, 325 (2d Cir. 1993) ............................................... 29

*In re Oneida Ltd.,*
   351 B.R. 79 (Bankr. S.D.N.Y. 2006) .......................................... 37

*In re Resorts Int'l, Inc.,*
   145 B.R. 412, 469 (Bankr. D.N.J. 1990) .................................... 37

*In re Sun Country Dev., Inc.,*
   764 F.2d 406 (5th Cir. 1985) ...................................................... 36

*In re Texaco, Inc.,*
   84 B.R. 893 (Bankr. S.D.N.Y. 1988) .......................................... 36

*In re The Leslie Fay Cos.,*
   207 B.R. 764 (Bankr. S.D.N.Y. 1997) ........................................ 37

*Yukos Cap. S.A.R.L. v. Feldman,*
   977 F.3d 216 (2d Cir. 2020) ....................................................... 25

**Statutes**

11 U.S.C. §1121(c) ........................................................................... 31

11 U.S.C. § 1129(c) ............................................................... 7, 22, 52

28 U.S.C. § 158 ................................................................................. 6

Bankruptcy Code chapter 11 ...................................................*passim*

Bankruptcy Code Section 363 ....................................................... 43,44

Bankruptcy Code Section 363(m) ................................................ 42,43

Bankruptcy Code Sections 363(m) and 1129(a)(3) ...................... 35

Bankruptcy Code Section 1121 ..................................................... 27

Bankruptcy Code Section 1129 ..................................................... 42

Bankruptcy Code section 1129(a)(3) .......................................*passim*

UCC ................................................................................................. 10

Uniform Commercial Code .............................................................. 10

**Other Authorities**

Fed. R. Bankr. P. 3016(a) ............................................................... 31

Rule 8015(a)(7)(B) ......................................................................... 55

Rule 8015(g) ................................................................................... 55

# FEDERAL RULE OF BANKRUPTCY
## PROCEDURE 8012 DISCLOSURE STATEMENT

Appellants 85 Flatbush RHO Mezz LLC ("Mezz"), 85 Flatbush RHO Hotel LLC ("Hotel") and 85 Flatbush RHO Residential LLC ("Residential" and with Mezz and Hotel, "Debtors" or "Appellants") are limited liability companies and Debtors in these jointly administered bankruptcy cases. Mezz is the 100% owner of Hotel and Residential. No public corporation owns 10% or more of the interests in the Debtors.

Appellants 85 Flatbush RHO Mezz LLC ("Mezz"), 85 Flatbush
RHO Hotel LLC ("Hotel") and 85 Flatbush RHO Residential LLC
("Residential" and with Mezz and Hotel, "Debtors" or "Appellants"), by
counsel, respectfully submit this brief in support of their appeal
("Appeal") from the July 6, 2022 Findings of Fact, Conclusions of Law,
and Order Confirming TH Holdco LLC's Second Amended Chapter 11
Plan, as Modified by this Order ("Confirmation Order") of the Honorable
Sean H. Lane[1] of the United States Bankruptcy Court for the Southern
District of New York ("Bankruptcy Court").

Appellants join in and adopt each of the arguments set forth in
Appellant 85 Flatbush Mezz LLC's ("Mezz Lender") brief in support of
its appeal of the Confirmation Order in the related appeal, Case No. 22-
cv-06233-CS as if fully set forth herein.[2]

---

[1] The Honorable Robert D. Drain presided over the hearings referenced herein. The Honorable Sean H. Lane was assigned to preside over the Debtors' cases subsequent to the conclusion of the June 30, 2022 confirmation hearing.(ECF 278).

[2] Appellants/Debtors and Appellant 85 Flatbush Mezz LLC are filing a joint appendix for these related appeals. References to the joint appendix are cited as "JA XXX." All references herein to ECF __ are to the docket entries of the chapter 11 proceedings captioned: *In re 85 Flatbush RHO Mezz, LLC, et al.,* Chapter 11 Case No. 20-23280 (SHL) filed in the United States Bankruptcy Court for the Southern District of New York.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Appellants respectfully submit that the Bankruptcy Court erred in approving TH Holdco LLC's ("TH Holdco" or "Appellee") Second Amended Chapter 11 Plan ("TH Holdco Plan")(ECF 211; JA002452-002493), (as modified on the record of the June 30, 2022 confirmation hearing, See, 6/30/22 Tr., ECF 282; JA003604-003694) which authorized the sale of the Hotel and Residential Debtors' real property located at 85 Flatbush Avenue Extension, Brooklyn, New York ("Property").

Prior to entry of the Confirmation Order (ECF 280; JA003478-3601), the Bankruptcy Court did not conduct an evidentiary hearing with respect to the value of the Property and the amount of the TH Holdco secured claim, which claim amount could only be determined by a valuation hearing and which Property valuation and claim amount was called into question by Debtors in their objection to the TH Holdco Plan ("Confirmation Objection")(ECF 229, 230 and 231; JA002896-002920; JA002921-003094; JA003095-003100).

Moreover, and more significantly, prior to entry of the Confirmation Order, the Bankruptcy Court had not yet fully adjudicated a pending Adversary Proceeding (ECF 159; JA000491-

000571) initiated by the Mezz Lender against TH Holdco in connection with the intercreditor agreement ("ICA") between TH Holdco as successor to the Original Lender, alleging certain breaches thereunder by the Original Lender. Final adjudication of the Adversary Proceeding is required to determine if TH Holdco is the holder of the senior lien on the Property and had the legal obligation to sell the Mortgage Loan to the Mezz Lender and the entity with standing to propose the TH Holdco Plan and the entity entitled to succeed to acquire title to the Property under the TH Holdco Plan. The associated finding made by the Bankruptcy Court in the Confirmation Order that the TH Holdco Plan was proposed in good faith pursuant to 1129 (a)(3) of the Bankruptcy Code was therefore premature and in error.

Entry of the Confirmation Order conferred good faith findings and secured lien rights to TH Holdco that TH Holdco may not hold after final adjudication of the Adversary Proceeding.

TH Holdco is indirectly owned by Ohana Real Estate Investors LLC, ("Ohana") and certain Ohana related entities (ECF 212; JA002494-002828). Ohana approached the Debtors, through a representative of the Debtors' equity holders, expressing to him their interest in the Debtors and

the Property as a plan sponsor or proposed joint venture with the Debtors, which would enable the Debtors to emerge from chapter 11 as a reorganized entity. (ECF 232; JA003101-003140).

The Bankruptcy Court's decision overruled the Debtors' Confirmation Objection and in doing so eliminated Debtors' ability to retain title to the Property and to reorganize. Implementation of the TH Holdco Plan will result in the Debtors' liquidation, permit title to the Property to transfer to TH Holdco, or its designee, with good faith findings in TH Holdco's favor, rendering this appeal and the Debtors' rights equitably moot. Therefore, affirming the Confirmation Order and authorizing the sale of the Property to TH Holdco, or its designee, will cause irreparable injury to the Debtors.

The record, particularly the declaration of the Debtors' equity representative, (ECF 232; JA003101-003140) makes clear that TH Holdco's intentions were and are to acquire title to the Property and extinguish the Debtors' Property rights and Mezz Lender's ICA rights prematurely. Permitting the Confirmation Order to stand before the Adversary Proceeding is fully adjudicated provides TH Holdco with premature and potentially undeserved protections, improperly

rewarding violations of the ICA and leaving Debtors without any remedy.

Appellants submit that the Bankruptcy Court's reasoning in entering the Confirmation Order was erroneous and should be reversed.

For all these reasons, and as further set forth below, Appellants respectfully request that the Court reverse the Confirmation Order and grant such other and further relief as this Court deems just and proper.

## JURISDICTIONAL STATEMENT

Appellants appeal from the Confirmation Order entered on July 6, 2022. (ECF 280; JA003478-003601). On July 20, 2022 the Debtors timely filed their notice of appeal of the Confirmation Order. (ECF 286; JA003824-003949).

This Court's jurisdiction over appeals from final orders of the bankruptcy court is conferred by 28 U.S.C. § 158.

## STATEMENT OF ISSUES

1.    Whether the Bankruptcy Court erred in overruling the Debtors' Confirmation Objection and entering the Confirmation Order without first holding a hearing to establish the value of the Debtors' Property.

2.     Whether the Bankruptcy Court erred in overruling the Debtors' Confirmation Objection and entering the Confirmation Order without first holding hearing to determine the allowed amount of TH Holdco's secured claim.

3.     Whether the Bankruptcy Court erred in entering the Confirmation Order without providing the Debtors with an opportunity to confirm their own plan of reorganization and considering the preferences of the Debtors' creditors and equity security holders in accordance with 11 U.S.C. § 1129(c).

4.     Whether the Bankruptcy Court erred in overruling the Debtors' Confirmation Objection and entering the Confirmation Order before a final adjudication of the adversary proceeding captioned: *In Re 85 Flatbush Mezz LLC v. TH Holdco LLC*, Adv. Proc. No. 22-07022 (SHL).

5.     Whether the Bankruptcy Court erred in overruling the Debtors' Confirmation Objection and entering the Confirmation Order finding that the TH Holdco plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected in "good faith" within the meaning of section 1129(a)(3) of the

Bankruptcy Code without taking evidence on the issue and having not adjudicated the Adversary Proceeding claiming TH Holdco improperly acquired its senior secured claim in violation of the ICA with the Mezz Lender.

6.      Whether the Bankruptcy Court erred in entering the Confirmation Order finding TH Holdco was a good faith purchaser under 363(m) of the Bankruptcy Code when it had not yet adjudicated the Adversary Proceeding, the bid deadline had not yet passed and the Bankruptcy Court did not take any evidence supporting the finding.

## STATEMENT OF THE CASE

The facts relevant to this Appeal are as follows:

Mezz is the 100% owner of Hotel and Residential. Hotel and Residential collectively own the property located at 85 Flatbush Extension, Brooklyn, New York ("Property")(ECF 1; JA000001-000019). The Property was acquired on or about September 19, 2019.  The Property is a 132,641 square foot, twelve-story, mixed-use property consisting of a 174-room boutique hotel on the first six floors known as the Tillary Hotel Brooklyn, a 58,652 square foot 64-unit luxury multi-family building and a 5,642 square foot parking garage. The residential

component of the Property has nine studios, 26 one-bedroom units, and 29 two-bedroom units. Of the 64 units, currently, two are occupied. (ECF 241; JA003175-003217).

To facilitate their purchase of the Property, Hotel and Residential obtained a loan ("Mortgage Loan") in the original principal amount of $70,000,000.00 from 85 Flatbush Avenue 1 LLC ("Original Lender"). (ECF 241; JA003175-003217).

In connection with the Mortgage Loan, Hotel and Residential granted Original Lender a mortgage and security interest in the Property. (ECF 241; JA003175-003217).

Simultaneously, Mezz obtained a loan ("Mezz Loan") in the amount of $6,000,000 from the Mezz Lender. (ECF 241; JA003175-003217).

In connection with the Mezz Loan, Mezz granted the Mezz Lender a pledge of its interests in Hotel and Residential. (ECF 241; JA003175-003217)

Original Lender and Mezz Lender entered into an Intercreditor Agreement ("ICA") dated September 19, 2019 which was amended on July 23, 2020. (ECF 241; JA003175-003217).

Mezz Lender noticed a Uniform Commercial Code foreclosure of the pledged interests which sale was rescheduled on two (2) occasions with a final sale date of December 18, 2020.  (ECF 241; JA003175-003217).

On December 18, 2020 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. (ECF 1, 20-23280; ECF 1, 20-23281; and ECF 1, 20-23282; JA000001-000019; 000020-000044; 000045-000064), staying the Mezz Lender's UCC foreclosure sale from proceeding.

Prior to the Petition Date, the Property operated as a hotel and residences, but its operations were materially impacted by the COVID-19 pandemic and the attendant shutdowns of non-essential businesses. (ECF 241; JA003175-003127) As there was considerable uncertainty as to the length of the government-imposed shutdown of hotel operations, and in order to mitigate their losses, Debtors entered into a short-term lease with the New York City Department of Homeless Services ("DHS Lease") to operate the hotel as a shelter.  (ECF 241; JA003175-003217). This short-term lease provided the Debtors with a source of income while regular hotel operations were barred from re-opening in the near term under the "New York State on Pause" Executive Order.  The DHS

Lease expired as of December 31, 2021, but remains in place on a month-to-month basis.

At the outset of the Debtors' cases, Debtors negotiated an agreement with their Original Lender for the consensual use of cash collateral which fixed the Original Lender's claim as of the Petition Date in the amount of $85,158,815.99. The cash collateral stipulation further provided that, "[T]he extent to which the Lender Claim is a secured claim will be determined by the Court based on the value of the Lender's Collateral…" (ECF 64; JA000065-000083 ).

As the Debtors' cases progressed, Debtors sought and obtained approval for the retention of Jones Lang LaSalle ("JLL") as the Debtors' exclusive real estate advisors to facilitate a sale or joint venture for the Property to form the basis of the Debtors' plan of reorganization. (ECF 133; JA000084-000096).

On October 12, 2021, the Bankruptcy Court entered an order authorizing the Debtors' retention of JLL as the Debtors' exclusive real estate advisors, effective as of September 4, 2021, to market the Property. (ECF 133, JA 000084-000096). JLL launched their marketing efforts on October 12, 2021, creating and establishing a data room for interested

parties accessible right after their executing a confidentiality agreement. The Debtors were advised that 69 confidentiality agreements were executed and JLL conducted 14 tours of the Property. The marketing period continued through November 17, 2021. A total of six written offers were received, that were later narrowed down to three potential purchasers for the Property, submitting proposals for the Property in the range of $80,000,000 to $86,500,000. (ECF 241; JA003175-003217)

Debtors proposed their original plan on November 24, 2021, which was premised on a sale of the Property to one of the bidders procured by JLL. (ECF 142; JA000097-000140)

Debtors were working on a parallel track looking for a white knight to act as a plan sponsor or pursue a joint venture with the Debtor which is how they came to meet Ohana, and its Chief Investment Officer, Franco Famularo ("Famularo")(ECF 232; JA003101-003140). Famularo is also TH Holdco's authorized signatory and the representative of TH Holdco who submitted, amongst other pleadings, a declaration in support of confirmation of the TH Holdco Plan (ECF 265; JA003357-003374), and attended and testified at the confirmation hearing (ECF 282; JA003604-003694).

4856-1494-2766, v. 6

Isaac Hager ("Hager"), a representative of the Debtors' equity holders, communicated regularly with Ariel Aber ("Aber"), Team Leader at DivcoWest Real Estate Services LLC ("DivcoWest"), who is responsible for investment activities for the metropolitan New York area, who introduced Ohana to Hager as Divco's "hotel partner." (ECF 232; JA003101-003140).

Believing the parties were acting in good faith and interested in pursuing a plan sponsor arrangement or a form of joint venture, and that a term sheet would be forthcoming, Hager provided copies of the "as built" plans and other information regarding the Property, information regarding the capital structure including the Mortgage Loan and Mezz Loan, rent roll and buyout status of any remaining tenants at the Residential Property, the condominium offering plan, and various other financial information regarding the Property to Aber, provided additional financial information to Famularo in October and November 2021 and personally walked them through the Property in October 2021. (ECF 232; JA003101-003140).

Throughout October, November and December 2021 Hager, and the Debtors believed that Ohana and Divco were performing their due

diligence in order to present a plan sponsor or joint venture transaction with the Debtors that would be the basis for the Debtors to propose a plan of reorganization, which plan would provide for payment in full to creditors and a return of investment to equity.

Instead, backed by Ohana, TH Holdco acquired the Mortgage Loan from the Original Lender. (ECF 212; JA002492-002828).

The Debtors' negotiation of a letter of intent for more than the $86,500,000 bid for the Property and final form of purchase agreement with the interested purchasers was interrupted by TH Holdco's acquisition of the Mortgage Loan from the Original Lender.

Debtors had been led to believe that Ohana, whose representatives had been communicating with a representative of the Debtors' equity holders, were interested in pursuing a joint venture or plan sponsor agreement with the Debtors and were entirely unaware that Ohana was simultaneously negotiating with the Original Lender to purchase the Mortgage Loan.

On or about February 4, 2022, TH Holdco filed its notice of transfer of claim number 3 from the Original Lender to TH Holdco which claim was filed against Hotel in the amount of $85,158,815.99. (ECF 24;

JA000141-000145) Simultaneous therewith, TH Holdco filed its notice of transfer of claim number 1 from the Original Lender to TH Holdco which claim was filed against Residential in the amount of $85,158,815.99. (ECF 23; JA000146-000150) The claim notices reference a January 28, 2022 assignment and assumption agreement between TH Holdco and the Original Lender.

Debtors and the Original Lender has been working collectively, along with the Mezz Lender, towards a consensual resolution of the Debtors' cases. In stark contrast to the Original Lender's cooperative approach in its dealing with the Debtors, shortly after TH Holdco acquired the Mortgage Loan, it raced to file a plan that completely altered the course of the Debtors' cases. (ECF 151; JA000151-000189)

On February 20, 2022, TH Holdco filed its original plan and disclosure statement, seeking to acquire the Property by a credit bid of its recently acquired secured claim plus a cash component with a nominal fund of money to be established for pro rata distribution to unsecured creditors. (ECF 151 and 152; JA000151-000189; JA000190-000335).

TH Holdco's proposed plan is far different from the plan sponsor or joint venture the Debtors and Hager anticipated and, if confirmed, would

result in TH Holdco acquiring the Property without paying the Debtors' creditors in full, and with equity losing their entire investment in the Property, a windfall in favor of TH Holdco, that Hager and the Debtors viewed as an improper "loan to own" strategy.

On March 23, 2022, the Mezz Lender commenced the Adversary Proceeding. (ECF 159; Adv. Proc. ECF 1; JA000491-000571). The complaint sought (i) a declaratory judgment that the Original Lender breached the ICA by declaring defaults without issuing a Purchase Option Notice (as defined in the ICA) and that the Mezz Lender holds an exclusive option right to purchase the Senior Loan Documents (as defined in the ICA) as of July 16, 2020, and (ii) an award of specific performance directing TH Holdco to sell and assign the Mortgage Loan to Mezz Lender based on what the purchase price would have been as of July 16, 2020.

Mezz Lenders objected to approval of the TH Holdco original disclosure statement based on its rights under the ICA and the issues raised in the Adversary Proceeding. (ECF 160; JA000572-000659).

Debtors objected to approval of the TH Holdco original disclosure statement for a number of reasons, including, but not limited to:

objecting to the amount of the TH Holdco secured claim and credit bid; objecting to approval of the disclosure statement prior to final adjudication of the Adversary Proceeding; and objecting to the manner by which TH Holdco came to acquire the Mortgage Loan from the Original Lender. (ECF 166; JA000785-000795).

A representative of the Debtors' equity holders, Isaac Hager, alleged that TH Holdco misled the Debtors' principals into believing TH Holdco was interested in being a plan sponsor or pursuing a joint venture with the Debtors which agreement would form the basis for the Debtors' emergence from bankruptcy. Instead, TH Holdco acquired the Mortgage Loan from the Original Lender and proceeded with its own plan by which it would acquire the Property by a credit bid, transferring title to the Property to TH Holdco or its designee, extinguishing Debtors' ability to reorganize and resulting in a limited return to creditors, no return to the Mezz Lender and the loss of the multi-million dollar investment in the Debtors made by their equity owners.

Simultaneous with its objection to the TH Holdco original disclosure statement, Debtors filed their amended plan of

4856-1494-2766, v. 6

reorganization and an initial disclosure statement[3] (ECF 161 and 162; JA000660-000700; JA000701-000761) which was based on their (1) procuring exit financing and a capital contribution from equity to fund their plan and (2) converting the short-term DHS Lease to a long-term multi-year lease.

Debtors sought approval of their disclosure statement on shortened notice so that its disclosure statement and plan could be considered simultaneous with the TH Holdco original disclosure statement and plan.  (ECF 163, 164 and 165; JA000762-000776; 000777-000781; 000782-000784).  TH Holdco opposed approval of the Debtors' request for a shortened notice period and the substance of the Debtors' disclosure statement.  (ECF 173; JA000796-000974). A hearing to consider the Debtors' request for approval of its disclosure statement on shortened notice was held on April 6, 2022, which was the same date as the hearing to consider the adequacy of the information contained in the TH Holdco original disclosure statement.  (ECF 186; JA000978-001031).

---

[3] Debtors' original plan was not accompanied by a disclosure statement.

After the April 6, 2022 hearing, TH Holdco filed a series of amendments to its plan and disclosure statement, seeking to address the various objections raised by Debtors and Mezz Lender as well as to incorporate the numerous issues raised by the Court to the contents of the TH Holdco original plan and disclosure statement. (ECF 188-194; JA001032-001071; 001072-001116; 001117-001156; 0011157-001201; 001202-001245; 001246-001564; 001565-001899; ECF 201-207; JA002011-002050; 002051-002094; 002095-002155; 002156-002208; 002209-002226; 002227-002292; 002293-002347).

Debtors objected to the amended plan and disclosure statement filed after the April 6, 2022 hearing for a number of reasons, including, but not limited to: objecting to approval of the amended disclosure statement prior to final adjudication of the Adversary Proceeding and for the amended documents failure to adequately and clearly disclose the timeline for the proposed post-confirmation auction process for the Property. (ECF 198; JA001910-001919).

On May 13, 2022, TH Holdco filed a further amended plan and disclosure statement for which they sought disclosure statement approval at a hearing held on May 16, 2022. (ECF 196 and 201-207;

JA001905-001909; 002022-002050; 002051-002094; 002095-002155; 002156-002208; 002209-002226; 002227-0022292; 002293-002347). Despite Debtors' objections to the amended disclosure statement (ECF 198; JA001910-001919), Mezz Lender's objection to the amended disclosure statement (ECF 199), and subject to certain revisions requested by the Bankruptcy Court, the TH Holdco amended disclosure statement was approved on the record of the May 16, 2022 hearing. (ECF 209; JA002348-002389).

On May 26, 2022, the Bankruptcy Court entered an order (ECF 210; JA002390-002451) approving the Second Amended Disclosure Statement Relating to the Second Amended Chapter 11 Plan filed by TH Holdco ("TH Holdco Disclosure Statement") (ECF 212; JA002494-002828) as having adequate information and scheduling confirmation on the TH Holdco Second Amended Chapter 11 Plan ("TH Holdco Plan") (ECF 211; JA002452-002493) for June 30, 2022.

Debtors interposed their Confirmation Objection, including a declaration and an appraisal for the Property, questioning the value of the Property and the amount of the secured component of TH Holdco's claim, and questioning TH Holdco's standing to credit bid for the

Property (ECF 229, 230 and 231; JA002896-002920; JA002921-003094; JA003095-003100) and its good faith in acquiring the underlying Mortgage Loan from the Original Lender, which was set forth in detail in the Hager Declaration attached to Debtors' motion seeking to disqualify TH Holdco from credit bidding for the Property and supporting exhibits. (ECF 232; JA JA003101-003140).

Debtors also filed their further amended plan and disclosure statement premised on an equity contribution of no less than $96,775,000 which would be the funding source for the Debtors' reorganization.  (ECF 240 and 241; JA003141-003174; 003175-0032317).

In support of their further amended plan, Debtors filed the Declaration of Daryl Hagler ("Hagler") which attached an agreement with the Debtors that established Hagler's commitment to fund the plan in an amount not less than $96,775,000. (ECF 231; JA003095-003100).

Hagler, along with his counsel, attended the June 30, 2022 hearing and filed a supplemental declaration (ECF 277; JA003457-003477) establishing his financial wherewithal to fund the Debtors'

plan, which the Bankruptcy Court accepted. (ECF 282; JA003604, 6/30/22 Tr. at p. 61:13-15).

Debtors also filed a motion seeking to disqualify TH Holdco from credit bidding for the Property based on its bad faith conduct in negotiating simultaneously with the Debtors' representatives regarding the Property and the Original Lender to acquire the Mortgage Loan. (ECF 232; JA003101-003140).

The Debtors sought expedited relief from the Bankruptcy Court to consider the credit bid disqualification motion along with preliminary approval of their amended disclosure statement and sought to have their plan and disclosure statement considered simultaneous with the June 30, 2022 hearing on confirmation of the TH Holdco Plan. (ECF 242, 243 and 244; JA003218-003232; 003233-003238; 003239-003244).

Debtors' Confirmation Objection also requested that confirmation of the TH Holdco Plan be delayed in order to allow Debtors the opportunity to solicit their amended plan for creditor consideration pursuant to 11 U.S.C. Section 1129(c) (ECF 229; JA002896-002920). Mezz Lender filed its own objection to the TH Holdco Plan which, amongst other objections, concurred with the Debtors request to delay

confirmation until the Adversary Proceeding was fully adjudicated and confirmed Mezz Lender's support of the Debtors' amended plan. (ECF 227; JA002880-002891).

The Bankruptcy Court denied the credit bid disqualification motion, declined to permit the Debtors to proceed with approval of their amended disclosure statement on shortened notice and overruled Debtors' objections to confirmation of the TH Holdco Plan. (ECF 282; JA003604-003694).

The Bankruptcy Court mistakenly equated and incorrectly assumed that the Hagler funding commitment of not less than $96,775,000 was Hagler's view of the value of the Property.

The Property value and the amount that Hagler was prepared to commit to fund the Debtors' plan are distinctly different analyses and amounts. The Bankruptcy Court concluded otherwise, making an unwarranted assumption and valuation determination of the Property without conducting an evidentiary hearing, despite Debtors having provided an appraisal with their Confirmation Objection, calling the Property value into question. (ECF 282; JA003604-003694, 6/30/22 Tr. at pages 61-63; 74-75)

The TH Holdco Plan is implemented by a sale of the Property, with TH Holdco submitting an opening bid for the Property consisting of a $90,000,000 credit bid plus cash in the amount of $4,000,000 to satisfy payments required under the TH Holdco Plan. The sale of the Property is to be conducted after the confirmation hearing pursuant to Bankruptcy Court approved bidding procedures that provided for bids for the Property to be submitted by July 29, 2022 and, to the extent bids were received, for JLL to conduct an auction sale for the Property on August 5, 2022 (ECF 210; JA002390-002451). The TH Holdco Plan was confirmed over the Debtors and Mezz Lender's objections, by entry of the Confirmation Order after the June 30, 2022 hearing. (ECF 282; JA003604-003694).

Under TH Holdco's Plan, TH Holdco will obtain title to the Property in exchange for its credit bid before final adjudication of the Adversary Proceeding and without a valuation hearing that would determine the value of the Property and the amount of the secured portion of the TH Holdco claim.

Debtors submit the Bankruptcy Court erred in overruling their Confirmation Objection. Based on the record, entry of the Confirmation

Order was clearly erroneous and for the reasons set forth herein and in the argument, below, the Bankruptcy Court erred in entering the Confirmation Order and it should be reversed by this Court on Appeal.

## STANDARD OF REVIEW

This Court reviews "findings of fact for clear error and conclusions of law *de novo.*" *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 138 n.54 (2d Cir. 2017). *See also In re Charter Commc'ns, Inc.,* 691 F.3d 476, 482-80 (2d Cir. 2012 ("Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo.*"). A finding of fact is clearly erroneous only if the Court is "left with the definite and firm conviction that a mistake has been committed." *In re Lehman Bros. 3 Holdings Inc.,* 855 F.3d 459, 469 (2d. Cir. 2017).

The Second Circuit has held that "'[a]n abuse of discretion occurs when a [trial] court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions.'" *Yukos*

*Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020) (quoting

*Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018)).

## ARGUMENT

### I. THE BANKRUPTCY COURT ERRED IN OVERRULING THE DEBTORS' CONFIRMATION OBJECTION AND ENTERING THE CONFIRMATION ORDER BEFORE FINAL ADJUDICATION OF THE ADVERSARY PROCEEDING

From the outset, the Bankruptcy Court failed to see the resolution of the Adversary Proceeding as a "gating issue" related to approval of the disclosure statement or that would require delay of approval of the TH Holdco disclosure statement or confirmation of the TH Holdco Plan. At the April 6, 2022 hearing to consider TH Holdco's original disclosure statement, the Court stated that "[W]hat I'm having a hard time seeing is how resolution of that claim is a gating item for proceeding with TH Holdco's proposed plan." (ECF 186; JA000978, 4/6/22 Tr. at p. 9: 17-19). In response, Mezz Lender directed the Court's focus to the crucial factor that "a resolution of the adversary proceeding is a gating issue because it goes to who may file a plan under Section 1121 of the Bankruptcy Code." (JA ECF 186; JA000978, 4/6/22 Tr. at p. 10:9-11).

The Bankruptcy Court confirmed the TH Holdco Plan without ever answering the question if the Mezz Lender had the right to the Purchase

Option Notice and to purchase the Mortgage Loan. That failure makes the Bankruptcy Court's ruling patently unfair to the Debtors and to the Mezz Lender's rights under the ICA, which will otherwise be irretrievably impaired. The failure to finally adjudicate the Adversary Proceeding prior to the sale of the Property irreparably harms both Debtors and Mezz Lender. If title to the Property transfers to TH Holdco or its designee, that transfer extinguishes both Debtors' rights to pursue a reorganization and Mezz Lender's rights under the ICA, rendering this appeal and the Adversary Proceeding moot.

TH Holdco is moving to rapidly implement and substantially consummate the TH Holdco Plan and the sale of the Property, which would allow them to use the doctrine of equitable mootness as a defense. Substantial consummation is defined in the Bankruptcy Code at Section 1101(2) to mean:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property deal with by the plan; and (C) commencement of distribution under the plan.

There is a presumption of equitable mootness when a chapter 11 plan has been "substantially consummated". *Cadle Co. II v. PC*

*Liquidation Corp. (In re PC Liquidation Corp.),* 383 B.R. 856, 863

(E.D.N.Y. 2008).  It has been held by the Second Circuit when applying

the doctrine of equitable mootness that "an appeal should…be

dismissed as moot, when, even though effective relief could conceivably

be fashioned, implementation of that relief would be inequitable."

*Deutsche Bank AG v. Metromedia Fiber Network (In re Metromedia*

*Fiber Network, Inc.*), 416 F.3d 136, 142 (2d Cir. 2005) (quoting *Official*

*Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. Official*

*Comm. of Unsecured Creditors of LTV Steel Co.* (*In re Chateaugay*

*Corp.)(Chateaugay I*), 988 F.2d 322, 325 (2d Cir. 1993)).

    "[A] bankruptcy appeal may be equitably moot in two situations:

when an unstayed order has resulted in a "comprehensive change in

circumstances," or when a reorganization is substantially

consummated".  *East 44th Realty, LLC v. Kittay*, 2008 U.S. Dist. LEXIS

7337, 18 (S.D.N.Y. Jan 23, 2008).  If the Confirmation Order is

affirmed, the Property will be acquired by TH Holdco or its designee,

thereby resulting in substantial consummation of the Plan before a

determination is made as to whether TH Holdco is the correct plan

proponent.  The transfer of title to the Property is an issue that was

acknowledged, properly, by the Bankruptcy Court at the April 6, 2022 hearing where Judge Drain noted, "[T]here's a gating issue here which is my comfort with the sale process." (ECF 186; JA JA000978; 4/6/22 Tr. at p. 50:10-11).

The Mezz Lender questioned TH Holdco's standing to propose and confirm a plan and take title to the Property by commencing the Adversary Proceeding. Mezz Lender claims a right to a Purchase Option Notice and the right to buy the Mortgage Loan and to propose a plan of reorganization. If this were to occur, there would be no adverse impact on TH Holdco, who would be paid off.

The Bankruptcy Court's subsequent order staying the effectiveness of the Confirmation Order, and by virtue thereof, the sale of the Property, gives credence to the argument that the Mezz Lender holds certain purchase option rights under the ICA, that, if exercised by Mezz Lender, would result in the Mezz Lender stepping into the shoes of TH Holdco and becoming the Hotel and Residential Debtors' senior secured creditor.

If TH Holdco is not the proper holder of the Mortgage Loan, or if it had a legal obligation to sell the Mortgage Loan to the Mezz Lender, TH

Holdco should not be permitted to propose and confirm a plan, credit bid for the Property and take title to the Property under the TH Holdco Plan. TH Holdco is trying to steamroll towards a sale without ever having to defend its conduct.

When a debtor's exclusive period to file a plan expires, "any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." *In re Dark Horse Tavern*, 189 B.R. 576, 583 (Bankr. N.D.N.Y. 1995); 11 U.S.C. §1121(c); Fed. R. Bankr. P. 3016(a). While TH Holdco, as the assignee of the Original Lender is a creditor of Hotel and Residential, the Confirmation Order extends rights to TH Holdco to acquire title to the Property prior to a determination as to whether Mezz Lender has senior lien rights and steps into TH Holdco's shoes.

If the Confirmation Order is affirmed and the sale to TH Holdco proceeds, once TH Holdco or its designee takes title, Debtors lose the Property and any ability to reorganize their businesses, equity loses its multi-million investment in the Property, the Debtors' appellate rights

are mooted out, and Mezz Lender's senior lien rights to the Property under the ICA are irrecoverable.

If however, the Adversary Proceeding is resolved favorably to the Mezz Lender, and Mezz Lender exercises its rights and becomes the senior lender on the Property, then the Debtors and Mezz Lender would have the opportunity to pursue the Debtors' proposed plan, which Mezz Lender supports, or another agreed to plan of reorganization, preserving the Debtors' Property ownership, providing for the Debtors' reorganization and going forward operations, paying creditors and preserving equity's multi-million dollar investment in the Property. There would also be no adverse impact to TH Holdco, who would be paid off by Mezz Lender's exercise of its purchase option. To preclude this opportunity by allowing TH Holdco to take title to the Property before adjudication of the Adversary Proceeding leaves the Debtors with no remedy, a scenario that the Bankruptcy Court should not have endorsed. And in fact, the record reflects that the Bankruptcy Court understood that the ICA and the breaches asserted by Mezz Lender thereunder did in fact exist and were a factor to be considered in the sale process.

4856-1494-2766, v. 6

The Bankruptcy Court noted at the April 6, 2022 hearing to consider approval of the TH Holdco disclosure statement, that the allegations contained in the Adversary Proceeding:

> is an assertion that their rights arising from an alleged breach of the intercreditor-agreement's provisions that give, under certain circumstances, a purchase option to the MEZZ Lender. And that may or may not have a bearing on the credit bid right, but I don't see it as, again, a bar to proceeding with the disclosure statement...I think that it can be dealt with, as Mr. Nash says, in the auction process.

(ECF 186; JA000978, 4/6/22 Tr. at p. 15: 2-12).

With respect to the Mezz Lender's rights, the Court also acknowledged that "it's possible that there's a violation of the agreement." (ECF 186; JA000978, 4/6/22 Tr. at p. 52: 5-6). This was noted again on the record of the June 30, 2022 confirmation hearing where Judge Drain stated in the context of Mezz Lender's not aggressively moving the Adversary Proceeding forward, but still recognized: "they have rights. They can assert a claim as they have against the senior lender, and they might have a remedy for that." (ECF 282; JA003604, 6/30/22 Tr. at p. 66: 20-22).

The Bankruptcy Court at the May 16 hearing to consider approval of the TH Holdco disclosure statement as amended, determined that

confirmation need not be delayed due the Adversary Proceeding, indicating the Court's perspective that the Adversary Proceeding was about money, (ECF 209; JA002348, 5/16/22 Tr at p. 34:1-15). Yet the Bankruptcy Court did not preclude considering the need to delay confirmation before final adjudication of the Adversary Proceeding, stating "[N]ow, you can maybe persuade me differently at confirmation. But I don't think I have to decide the lawsuit before I can schedule the confirmation hearing.", (ECF 209; JA002348, 5/16/22 Tr. at p. 34:16-18. 36). In fact, the Bankruptcy Court suggested language be placed in the disclosure statement leaving "open for a hearing at confirmation whether the adversary proceeding can serve any basis to delay confirmation." (ECF 209; JA002348, 5/16/22 Tr. at p. 36:12-14).

Despite these statements by the Court the confirmation hearing was not delayed. Both Debtors and Mezz Lender objected to confirmation on the basis that the Adversary Proceeding must be adjudicated prior to entry of the Confirmation Order. Debtors further objected to the TH Holdco Plan on the basis that it was not proposed in good faith as a result of the manner by which TH Holdco acquired the Mortgage Loan. Despite these objections being raised, the Bankruptcy Court confirmed the TH

Holdco Plan, making findings of good faith in favor of TH Holdco, authorizing the sale of the Property, and as a result, eradicating Debtors Property rights and causing irrecoverable damage to Mezz Lender's rights under the ICA if the Confirmation Order is affirmed.

Clearly the Bankruptcy Court was inconsistent in its statements and considerations regarding the Adversary Proceeding, acknowledging at various points that the Mezz Lender holds certain rights under the ICA, but not delaying confirmation, and entry of the Confirmation Order and therefore the attendant sale of the Property, before any final ruling on the merits of the Adversary Proceeding. On this basis, entry of the Confirmation Order was in error and must be reversed. This is especially true given the finding of good faith conduct the Bankruptcy Court had to make under Sections 363(m) and 1129(a)(3) of the Bankruptcy Code.

II.  **THE BANKRUPTCY COURT ERRED IN OVERRULING THE DEBTORS' CONFIRMATION OBJECTION AND ENTERING THE CONFIRMATION ORDER FINDING THAT THE TH HOLDCO PLAN WAS PROPOSED IN "GOOD FAITH" WITHIN THE MEANING OF SECTION 1129(A)(3) OF THE BANKRUPTCY CODE**

The Bankruptcy court overruled the Debtors' Confirmation Objection that the TH Holdco Plan was not proposed in good faith within the meaning of Section 1129(a)(3) of the Bankruptcy Code.

4856-1494-2766, v. 6

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed 'in good faith and not by any means forbidden by law.'" 11 U.S.C. § 1129(a)(3). Courts in the Second Circuit have found that the good faith standard requires "a showing that 'the plan [was] proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected.'" *In re Argo Fund Ltd. v. Bd. of Dirs. of Telecom Arg., S.A. (In re Bd. of Dirs. of Telecom Arg., S.A.)*, 528 F.3d 162, 174 (2d Cir. 2008); *In re Koelbl*, 751 F. 2d 137, 139 (2d Cir. 1984). Debtors submit that the TH Holdco Plan was not proposed as such and the Bankruptcy Court erred in overruling the Debtors' Confirmation Objection on this issue.

Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied." *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985). "[A] plan is considered proposed in good faith 'if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'" *In re Texaco, Inc.*, 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988) (citation omitted). Although the Bankruptcy Code does not define good faith,

"bad faith has been defined as 'the opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not promoted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.'" *In re The Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Resorts Int'l, Inc.*, 145 B.R. 412, 469 (Bankr. D.N.J. 1990)).

Additionally, good faith is to be determined in light of the totality of the circumstances surrounding formulation of the plan. *See In re Oneida Ltd.*, 351 B.R. 79, 85 (Bankr. S.D.N.Y. 2006) ("Good faith should be evaluated 'in light of the totality of the circumstances surrounding confirmation.'"); *In re Lionel L.L.C.*, 2008 Bankr. LEXIS 1047, 1615-16 (Bankr. S.D.N.Y. Mar. 31, 2008) (looking to the totality of the circumstances in order to determine a plan was proposed in good faith under section 1129(a)(3)).

The Bankruptcy Court could not make the conclusion that the TH Holdco Plan was proposed in good faith under Section 1129(a)(3) of the Bankruptcy Code without first fully adjudicating the Adversary Proceeding so as to know who was the legitimate plan proponent and

cannot make the findings of good faith set forth in the Confirmation Order regarding the purchaser of the Property prior to the conclusion of the sale process or determining good faith under Section 1129(a)(3) of the Bankruptcy Code without an evidentiary hearing examining the conduct of TH Holdco and Famularo. The good faith finding currently in favor of TH Holdco and the final adjudication of the Adversary Proceeding are inextricably interwoven as it may very well be determined in the Adversary Proceeding that a breach of the ICA provides Mezz Lender with senior lien holder rights. If it is determined that there was a breach of the ICA and the Mezz Lender has the rights to become the holder of senior lien on the Property and succeeds to become the holder of the senior lien on the Property, it, not TH Holdco is the correct plan proponent. It was improper for the Court to make a good faith finding in favor of TH Holdco prior to a determination with respect to whether there was a breach of the ICA that gives Mezz Lender a purchase option, which, if exercised would remove TH Holdco from the senior lien position.

Additionally, the Bankruptcy Court made a good faith finding under Section 1129(a)(3) of the Bankruptcy Code claiming that TH Holdco proposed the Plan in good faith and did not engage in any

misconduct in acquiring the Mortgage Loan. The evidence in the record reflects otherwise. It is undeniable that Ohana communicated directly with Hager and induced Hager to provide non-publicly available financial information to Ohana who portrayed itself as a financial partner in a prospective reorganization. Hagler declared as such, stating: "Believing the parties were acting in good faith and interested in pursuing a plan sponsor arrangement or some form of joint venture, I continued to provide financial information to DivcoWest and Ohana, not realizing that they were simultaneously negotiating with the Prepetition Lender to acquire its loan position". (ECF 232, JA003101-003140). Ohana's meetings and communications with Hager were confirmed by Famularo's testimony at the June 30, 2022 confirmation hearing. (ECF 282; 003604; 6/30/22 Tr. at pages 45-52. If Ohana had disclosed to Hager that it had groups in its company that purchased loans, Hager undoubtedly would not have provided any financial information to Ohana and Famularo. There is no doubt the Debtors, through Hager, would have abandoned any further communications or negotiations and would have ceased providing Ohana with financial information regarding the Debtors if they

were aware of the fact that Ohana was seeking to acquire the Mortgage Loan.

Misleading the Debtors, through their equity representative, into providing Ohana with financial and other information when their intention was to buy the Mortgage Loan, which would clearly and negatively impact the Debtors' reorganization efforts, is the opposite of good faith.

As previously noted, good faith" is not defined in the Bankruptcy Code, but this Circuit requires that the plan be proposed "with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *ArgoFund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A (In re Bd. of Dirs. of Telecom Argentina, S.A.),*528 F.3d 162, 174 (2d Cir. 2008) (internal quotations and citation omitted).

In this case, TH Holdco does not profess a lack of awareness of the Purchase Option Right contained in the ICA. TH Holdco spent tens of millions of dollars to acquire the Mortgage Loan and certainly had counsel review the ICA as part of their due diligence for the Mortgage Loan acquisition. TH Holdco does not claim to believe the obligation to

provide notice to Mezz Lender was complied with or that the obligation to provide notice was never triggered.

So after negotiating with Hager and obtaining from him financial and other information about the Debtors' Property under the guise of a plan sponsorship or joint venture arrangement with the Debtors, instead Ohana negotiates an acquisition of the Mortgage Loan by TH Holdco. TH Holdco, without believing the notice provisions under the ICA were fulfilled then immediately proposes its own plan, seeking to acquire the Property and wipe out Debtors' equity. This is the opposite of honesty and good intentions and clearly fails to meet the standard required in order to obtain a good faith finding under Section 1129(a)(3) of the Bankruptcy Code. The Bankruptcy Court erred in making the good faith finding in favor of TH Holdco, an error that must be reversed on appeal.

Collectively, the lack of finality of any adjudication on the merits of the Adversary Proceeding and therefore whether TH Holdco is a proper plan proponent in conjunction with the questions as to the manner by which TH Holdco came to acquire the Mortgage Loan fail in any manner to support a finding under applicable Second Circuit law that the TH Holdco Plan was proposed in good faith.

Therefore, Bankruptcy Court's good faith finding in favor of TH Holdco as a good faith plan proponent should be reversed.

### III. THE BANKRUPTCY COURT ERRED IN ENTERING THE CONFIRMATION ORDER FINDING TH HOLDCO WAS A GOOD FAITH PURCHASER UNDER 363(M) OF THE BANKRUPTCY CODE

Related to the argument requiring reversal of the Confirmation Order in connection with the Bankruptcy Court making a finding under Section 1129(a)(3) of the Bankruptcy Code that TH Holdco proposed the TH Holdco Plan in good faith is the error in the good faith purchaser finding under Section 363(m) of the Bankruptcy Code.

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Good faith purchaser is not defined in the Bankruptcy Code, "but the Second Circuit has adopted the traditional equitable definition: 'one who purchases the assets for value, in good faith and without notice of adverse claims.'" *BDC Fin., LLC v. Metaldyne Corp. (In re Metaldyne Corp.)*, 421 B.R. 620 (S.D.N.Y. 2009), citing *Licensing by Paolo, Inc. v.*

*Sinatra (in re Gucci),* 126 F.3d 380, 390 (2d Cir. 1997) ("Gucci II"). "The good faith analysis is focused on the purchaser's conduct in the course of the bankruptcy proceedings." *Gucci II* at 390. "This includes the purchaser's actions in preparation for and during the sale itself. *Lifschultz v. Lifschults Estate Mgmt. LLC (In re Lifschultz Estate Mgmt. LLC)*, No. 18 CV 1962 (VB), 2019 BL 102905 (S.D.N.Y. Mar. 25, 2019).

Section 363 (m) is meant to protect a good faith purchaser of assets in the event the authorization for such sale is reversed on appeal. "When assessing a purchaser's good faith, courts examine 'the integrity of his conduct during the course of the sale proceedings; where there is lack of such integrity, a good faith finding may not be made." *In re Metaldyne Corp.*, 421 B.R. 620, 625. A good faith determination "is a mixed question of law and fact." *In re Metaldyne Corp.*, 421 B.R. 620, 625.

It is nonsensical to make a good faith finding in TH Holdco's favor under this analysis. In addition, making such a finding was procedurally improper and entirely premature.

First of all, there is no underlying motion or application that requested sale approval under Section 363 of the Bankruptcy Code. Where the sale is governed by Section 1129 of the Bankruptcy Code, not

Section 363 of the Bankruptcy Code, the Confirmation Order cannot make this finding. See, *In Re Ditech Holding.*, 2019 WL 4073378, (S.D.N.Y. August 28, 2019) ("where a debtor proposes a sale pursuant to a plan, the sale is not under section 363 and, by its plan terms, section 363(f) is inapplicable.")

Second of all, the finding was premature. The Confirmation Order was entered on July 6, 2022, which is a date prior to the conclusion of the July 29, 2022 bid deadline. Therefore, at the time the Court made a good faith finding in favor of the eventual purchaser of the Property, the identity of that purchaser was not known. The TH Holdco Plan specifically provides for a post-confirmation sale and auction process for the Property. In fact, at the May 16, 2022 hearing to consider approval of the TH Holdco amended disclosure statement, Debtors reiterated their objections to the lack of clarity regarding the sale process, with counsel stating, "I just want to make sure while JLL is on the phone to clarify with the sale process and the time line, is that this is going to be a post confirmation auction and sale process…" (ECF 209; JA002348, 5/16/22 Tr. at p. 12: 22-25). There was extensive discussion by both Debtors' counsel, Mezz Lender counsel and the Court regarding the sale and

auction process and emphasis on the sale taking place post-confirmation after an additional marketing period for the Property. (ECF 209; JA002348, 5/16/22 Tr. at p. 8; 9; 14; 15; and 16). The post-confirmation marketing period had not even commenced, let alone concluded, nor had the July 29, 2022 bid deadline passed at the time of entry of the Confirmation Order.

The Bankruptcy Court also clearly observed in denying the credit bid disqualification motion that to the extent there were any issues that called into question the TH Holdco credit bid going forward, the parties' rights to object to the credit bid remained in place, "[S]o if there's – and I'm not saying there would be, but I just want to not preclude anyone from alleging as we proceed towards the auction that if there is subsequent conduct that would warrant my limiting its credit bidding for cause…Then that issue can be raised." (ECF 282; JA003604, 6/30/22 Tr. at p. 86:4-10). The Court was obviously aware of and recognized that there was the potential for improper conduct in the auction process after entry of the Confirmation Order, but prior to any sale. By this language in the record alone, the Court could not and should not have made a good faith finding in favor of a then unknown purchaser.

4856-1494-2766, v. 6

Therefore, until the purchaser was known and identified, the Confirmation Order improperly and prematurely made a finding not based on evidence in the record.

As a result, all of the 363 findings in the Confirmation Order must be reversed.

## IV. THE BANKRUPTCY COURT ERRED IN OVERRULING THE DEBTORS' CONFIRMATION OBJECTION AND ENTERING THE CONFIRMATION ORDER WITHOUT FIRST HOLDING A HEARING TO ESTABLISH THE VALUE OF THE DEBTORS' PROPERTY AND DETERMINING THE ALLOWED AMOUNT OF TH HOLDCO'S SECURED CLAIM

In their Confirmation Objection, the Debtors attached an appraisal for the Property that valued the Property at $72,000,000, setting forth that

> there is no evidence in the record that demonstrates that the value of the Property as of the Petition Date exceeded $72,000,000. To the extent that the Court believes that there is insufficient evidence in the record to determine the value of the Property as of the Petition Date, the Court should schedule a valuation hearing and then proceed with confirmation of both proposed plans after the value of the Property has been determined.

(ECF 229; JA002896-002920).

The Property's value had to be determined in order to determine the amount of TH Holdco's secured claim in accordance with the cash

collateral stipulation which provided that "[T]he extent to which the Lender Claim is a secured claim will be determined by the Court based on the value of the Lender's Collateral…" Yet, no determination was made at an evidentiary hearing at or prior to the confirmation hearing. In fact, at the April 6, 2022 hearing to consider approval of TH Holdco's initial disclosure statement, the Bankruptcy Court noted:

> I think some of these statements, since I'm approving it as containing adequate information, need to be softened in terms of their absoluteness. So for example, on page 11 where the disclosure statement talks about TH Holdco's secured claim, I have no problem with you referencing the cash collateral order and how it – it allowed the claim. I – I cannot say today that you are entitled to an additional $22 million dollars of post-petition interest.
>
> I don't know if that's the case. I haven't done the math, I don't know, you know, if that's – if you're – if you're including in that number interest on interest, so I think you need to soften down the phrase "is entitled….
>
> (ECF 186; JA000978, 4/6/2022 Tr. at p. 40:10-21).
>
> And as TH Holdco's counsel concurred:
>
> Understood, Your Honor. And – and our general approach on something that might be controversial was to say it's – it's from what TH Holdco's position is --…
>
> --also just clarifying that this is our position…and, you know, there's been absolutely no ruling by Your Honor on it…

(ECF 186; JA000978, 4/6/2022 Tr. at p. 40:23-25 and p. 41: 2-9).

The amount of the TH Holdco secured claim came up again at the May 16, 2022 hearing to consider the amended TH Holdco disclosure statement where again the Bankruptcy Court noted:

> The Court: One last point on page 10, the definition of secured claim, which starts at 9, days, means a claim to the extent secured by property of the estate, the amount of which is equal to or less than the value of such property, as set forth in the plan, as agreed to by the holder of such claim and, and then I would put this phrase in, except as to TH Holdco's claim. TH Holdco can't just allow its own claim in whatever amount it wants.
>
> Mr. Richards: Understood, obviously our position is the March 2021 order sets forth most of our claim already.
>
> The Court: it does, it does. But this would let you say, it's not only that, but it's 125 million.
>
> (ECF 209; JA002348, 5/16/2022 Tr. at p. 29: 9-20).

In this case, while the Court acknowledges at various hearings that the amount of the TH Holdco claim had not been finally determined, a fact confirmed by TH Holdco's counsel. (ECF 282; JA003604, 6/30/22 Tr. at p. 57 ("whatever post-petition is based on the value of the property"), no valuation hearing was ever conducted to determine the value of the Property and the commensurate amount of TH Holdco's secured claim.

4856-1494-2766, v. 6

TH Holdco, when questioned on the record of the confirmation hearing confirmed they did not base their credit bid for the Property on a recent appraisal, did not provide an appraisal and had no intention of obtaining an appraisal.

> Mr. Griffin: Good afternoon, Mr. Famularo.  Just one question.  Your credit bid, is that based on an appraisal of the property – a recent appraisal of the property that you guys have done?
>
> Mr. Famularo:  It is not.  No.  Not a – formal third party appraisal.
>
> Mr. Griffin: Understood.  Have you – have your firm conducted or is your firm planning to conduct an appraisal of the property?
>
> Mr. Famularo:  No, we're not.
>
> Mr. Griffin: Okay.  Or have a third party do so?
>
> Mr. Famularo:  We're not. No.
>
> (ECF 282; JA003604, 6/30/2022 Tr. at p. 53: 1-12).

The Debtors, however, submitted an appraisal with their Confirmation Objection.  This appraisal was not properly considered by the Bankruptcy Court.  Instead, the Bankruptcy conflated several issues, utilizing the TH Holdco credit bid amount and the Hagler plan funding amount to be the equivalent of the Property's value.  However, skipping a formal valuation process on the assumption that the plan

funding amount is the same as a determination of the Property value was an error. What Hagler as plan funder was willing to pay to fund the Debtors' plan and what he believes the Property is worth are not the same. The incorrect conclusion by the Bankruptcy Court that there is a correlation between the credit bid or plan funding amount and value of the Property has the effect of erasing Section 506(a) from the Bankruptcy Code. In failing to hold an evidentiary hearing on valuation, the Bankruptcy Court eliminated any opportunity for the Debtors to confirm their plan of reorganization, which is clear and reversible error.

Generally speaking, when a property valuation is contested, Courts will require an evidentiary hearing. *See D.A.N. Joint Venture v. Deoki*, 1999 U.S. Dist. LEXIS 12974 at *6 (S.D.N.Y. Aug. 20, 1999) (when there are two conflicting real estate appraisals, "a triable issue of fact is created than can only be resolved at an evidentiary hearing"); *see also In re Gross*, 2022 Bankr. LEXIS 600 at *12 (Bankr. D.N.J. Mar. 7, 2022) (where parties do not agree on property value, "evidentiary hearing is required"); *Citicorp Sav. V. Oliver (In re Oliver)*, 183 B.R. 87, 92 (Bankr. W.D. Pa.

1995) (disputed value of a property is a material factual question requiring an evidentiary hearing).

Therefore, the Court erred in entering the Confirmation Order without first conducting an evidentiary hearing to determine the value of the Property and the amount of TH Holdco's secured claim.

## V. THE BANKRUPTCY COURT ERRED IN ENTERING THE CONFIRMATION ORDER WITHOUT PROVIDING THE DEBTORS WITH AN OPPORTUNITY TO CONFIRM THEIR OWN PLAN OF REORGANIZATION AND CONSIDERING THE PREFERENCES OF THE DEBTORS' CREDITORS AND EQUITY SECURITY HOLDERS IN ACCORDANCE WITH 11 U.S.C. § 1129(C)

In the Confirmation Objection, the Debtors and Mezz Lender requested that confirmation of the TH Holdco Plan be delayed to allow for the Debtors to solicit the Debtors' Plan to creditors. The TH Holdco Plan does not provide for payment to insider unsecured creditors or payment to the Mezz Lender, wipes out the Debtors' principals equity and liquidates the Debtors.

The Debtors' Plan provides for the Debtors' reorganization and the continuing operation of the Hotel Property and Residential Property based on the Hagler funding of no less than $96,775,000 into Mezz. The funding will be used to pay the allowed TH Holdco secured claim,

administrative claims, fee claims, all allowed unsecured claims, including insiders and a significant payment to the Mezz Lender. Additionally, as the Debtors' plan proposes a reorganization, equity interests in Hotel and Residential will be retained.

Because the Debtors presented a feasible plan that offers better treatment to all unsecured creditors, equity owners and the Mezz Lender, confirmation of the TH Holdco Plan should have been delayed to allow the Debtors the opportunity to solicit the Debtors' Plan with the choice of plan being put to the Debtors' creditors in accordance with Section 1129(c) of the Bankruptcy Code.

Section 1129 (c) provides that when more than one plan is confirmable, "the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm." 11 U.S.C. § 1129(c); *see also In re Landmark Park Plaza Ltd. P'ship*, 167 B.R. 752, 757 (Bankr. D. Conn. 1994) ("creditors should be given the opportunity to consider competing plans to determine what is in their best interests").

Further, the Debtor's Plan proposes a reorganization while the TH Holdco Plan is a liquidating plan that provides for a sale of the Property. When two plans are confirmable, a plan of reorganization is preferable to

a plan to liquidate. *See In re Holley Garden Apts., Ltd.*, 238 B.R. 488, 496 (Bankr. M.D. Fla. 1999) (debtor's plan that maximizes payments to creditors while rehabilitating debtor is preferable to a plan that extinguishes debtor's existence).

When there are competing plans, "the best interests of creditors, as well as the Debtors, must be considered." *In re Mid-State Raceway, Inc.*, 343 B.R. 21, 31 (Bankr. N.D.N.Y. 2006).

Accordingly, because the Debtors' Plan provides for a better recovery to unsecured creditors of all three Debtors, including insider claims, and the Mezz Lender, and does not extinguish any of the Debtors' membership interests, the Court erred in entering the Confirmation Order when Debtors should have been allowed to solicit votes from creditors on the Debtors' Plan and let creditors determine which plan should be confirmed.

4856-1494-2766, v. 6

## CONCLUSION

For all of the foregoing reasons, Appellants respectfully submit that the Bankruptcy Court erred in entering the Confirmation Order and respectfully request the Court reverse the Confirmation Order in all respects and grant such other and further relief as the Court deems just and proper.

Dated:    New York, New York
            August 22, 2022

LEECH TISHMAN ROBINSON BROG PLLC

By: /s/ A. Mitchell Greene
     A. Mitchell Greene
     875 Third Avenue
     New York, NY 10022
     (212) 603-6300

Attorneys for Debtors-Appellants 85 Flatbush RHO Mezz LLC, 85 Flatbush RHO Hotel LLC and 85 Flatbush RHO Residential LLC

## CERTIFICATE OF COMPLIANCE WITH RULE 8015(a)(7)(B)

This Appellants' Brief complies with the type-volume limitation of rule 8015(a)(7)(B) because it contains 10,071 words, excluding those parts of the brief exempted by Rule 8015(g).

Dated:    New York, New York
            August 22, 2022

LEECH TISHMAN ROBINSON BROG PLLC

By: /s/ A. Mitchell Greene
    A. Mitchell Greene
    875 Third Avenue
    New York, NY 10022
    (212) 603-6300

Attorneys for Debtors-Appellants
85 Flatbush RHO Mezz LLC, 85 Flatbush RHO Hotel LLC and 85 Flatbush RHO Residential LLC

4856-1494-2766, v. 6