**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

───────────────────────────────────────────────────────────

*In re:*

85 FLATBUSH RHO MEZZ LLC, 85 FLATBUSH RHO HOTEL LLC,
85 FLATBUSH RHO RESIDENTIAL LLC,

Debtors.

───────────────────────────────────────────────────────────

85 FLATBUSH RHO MEZZ LLC, 85 FLATBUSH RHO HOTEL LLC,
85 FLATBUSH RHO RESIDENTIAL LLC,

Appellants,

v.

TH HOLDCO LLC,

Appellee.

───────────────────────────────────────────────────────────

Appeal from the United States Bankruptcy Court for the
Southern District of New York, Bankr. Case No. 20-23280 (SHL)

───────────────────────────────────────────────────────────

**BRIEF OF APPELLEE TH HOLDCO, LLC IN OPPOSITION TO
BRIEF OF DEBTORS-APPELLANTS**

───────────────────────────────────────────────────────────

**CORPORATE DISCLOSURE STATEMENT**

Appellee TH Holdco, LLC ("<u>TH Holdco</u>" or "<u>Appellee</u>") is owned 100% by TH Pledgor LLC, a Delaware limited liability company.  Appellee is ultimately indirectly owned by certain Ohana related funds which are privately held and not publicly traded.  OREI Long Term Equity Fund UGP LLC, a Delaware limited liability company, acts as the ultimate general partner, and the funds are managed by an Ohana affiliated entity, OREI Advisors LP, a Delaware limited partnership.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iv

PRELIMINARY STATEMENT.......................................................................................... 1

STATEMENT OF APPELLATE JURISDICTION .............................................................4

STATEMENT OF ISSUES PRESENTED...........................................................................4

STANDARD OF REVIEW ..................................................................................................5

STATEMENT OF THE CASE AND RELEVANT FACTS................................................5

   A.     The Senior Loan Documents & The ICA .................................................................5

   B.     Key Postpetition Developments................................................................................7

     i.    Cash Collateral...................................................................................................7

     ii.   The Debtors' Chapter 11 Plan Exclusivity Periods.........................................8

     iii.  JLL Retained as Broker and Markets the Property .........................................9

   C.     TH Holdco's Plan, Mezzanine Lender's Objection, and the Adversary Proceeding...................9

     i.    Procedural Background......................................................................................9

     ii.   Bankruptcy Court Hearings ..............................................................................9

     iii.  The Plan and Sale Process ..............................................................................11

ARGUMENT.....................................................................................................................11

   I.     The Bankruptcy Court Correctly Overruled the Debtors' Confirmation Objection and Entered the Confirmation Order. ....................................................11

   II.    The Bankruptcy Court Correctly Found that the TH Holdco Plan Was Proposed in "Good Faith" Within the Meaning of Section 1129(a)(3) of the Bankruptcy Code. .................18

   III.   The Bankruptcy Court Correctly Found that TH Holdco was a Good Faith Purchaser under § 363(m) of the Bankruptcy Code. ......................................21

   IV.   The Bankruptcy Court Correctly Valued TH Holdco's Secured Claim and Found that a Market Test is the Best Method to Establish the Property's Value. ...........................25

   V.    The Debtors' Plan Was Patently Unconfirmable and Therefore the Bankruptcy Court Did Not Violate 11 U.S.C. Section 1129(c)...............................31

CONCLUSION...................................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In Re 85 Flatbush Mezz LLC v. TH Holdco LLC*,
    Adv. Proc. No. 22-07022 (SHL). ................................................................................................. 4

*In re Adelphia Commc'ns Corp.*,
    361 B.R. 337 (S.D.N.Y. 2007) ................................................................................................. 12

*Adelphia Recovery Tr. v. Goldman, Sachs & Co.*,
    748 F.3d 110 (2d Cir. 2014) ................................................................................................... 31

*In re Argo Fund Ltd. v. Bd. of Dirs. of Telecom Arg., S.A. (In re Bd. of Dirs. of Telecom Arg., S.A.)*,
    528 F.3d 162 (2d Cir. 2008) ................................................................................................... 18

*Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street Partnership*,
    526 U.S. 434 ..................................................................................................................... 25, 26

*In re Best Prods. Co.*,
    177 B.R. 791 (S.D.N.Y.1995) *aff'd on other grounds*, 68 F.3d 26 (2d Cir.1995) .............. 12

*In re C.C. Ming (U.S.A.) Ltd. P'ship*,
    No. 03-13369 (BRL), 2005 WL 3782590 (Bankr. S.D.N.Y. Apr. 25, 2005) ......................... 22

*In re Carmania Corp. N.V.*,
    156 B.R. 119 (Bankr. S.D.N.Y. 1993) ................................................................................... 29

*In re Champion Enterprises, Inc.*,
    2012 WL 3778872 (Bankr. D. Del. Aug. 30, 2012) ............................................................... 27

*In re Chemtura Corp.*,
    439 B.R. 561 (Bankr. S.D.N.Y. 2010) ............................................................................. 19, 27

*In re Chrysler*,
    405 B.R. 84 (Bankr. S.D.N.Y. 2009) ..................................................................................... 27

*Czyzewski v. Jevic Holding Corp.*,
    580 U.S. 451 (2017) ............................................................................................................... 32

*D.A.N. Joint Venture v. Deoki*,
    98 Civ. 233 (LMM), 1999 U.S. Dist. LEXIS 12974 (S.D.N.Y. Aug. 20, 1999) ............. 26, 27

*In re Delphi Corp.*,
    No. 05-44481RDD, 2009 WL 2482146 (Bankr. S.D.N.Y. July 30, 2009) .......................... 22

*In re Ditech Holding Corp.*,
    606 B.R. 544 (Bankr. S.D.N.Y. 2019) ............................................................................. 19, 23

*In re Equan Realty Corp.*,
No. 08-14017(RDD), 2009 WL 7193572 (Bankr. S.D.N.Y. Dec. 17, 2009) .......................22

*In re Farwest Pump Co.*,
621 B.R. 871 (Bankr. D. Ariz. 2019) ...............................................................................35

*In re Granite Broad. Corp.*,
369 B.R. 120 (Bankr. S.D.N.Y. 2007) ..............................................................................27

*Gropper v. David Ellis Real Est., L.P.*,
No. 13 CIV. 2068 ALC JCF, 2013 WL 3892899 (S.D.N.Y. July 29, 2013)......................16

*In re Gross*,
No. 09-21095, 2022 WL 682932 (Bankr. D.N.J. Mar. 7, 2022) ...................................26, 27

*In re Holley Garden Apts., Ltd.*,
238 B.R. 488 (Bankr. M.D. Fla. 1999).............................................................................34

*In re JTR Corp.*,
958 F.2d 602 (4th Cir.1992) .............................................................................................11

*In re Koelbl*,
751 F. 2d 137 (2d Cir. 1984) ............................................................................................18

*In re Kors*,
819 F.2d 19 (2d Cir. 1987) ...............................................................................................12

*Krafsur v. Scurlock Permian Corp.* (*In re El Paso Refinery, L.P.*),
171 F.3d 249 (5th Cir. 1999) ............................................................................................12

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .........................................................................................................16

*In re LATAM Airlines Grp. S.A.*,
No. 20-11254 (JLG), 2022 WL 2657345 (Bankr. S.D.N.Y. July 8, 2022) .........................12

*In re Lehman Bros. 3 Holdings Inc.*,
855 F.3d 459 (2d Cir. 2017) ...............................................................................................5

*Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci*),
126 F.3d 380 (2d Cir. 1997) .........................................................................................22, 24

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
676 F.3d 83 (2d Cir. 2012) ...............................................................................................17

*In re Manville Forest Prod. Corp.*,
896 F.2d 1384 (2d Cir. 1990) ..............................................................................................5

*In re Moreau*,
135 B.R. 209 (N.D.N.Y.1992)...........................................................................................12

*In re Nortel Networks Secs. Litig.*,
539 F.3d 129 (2d Cir. 2008) ........................................................................ 21

*In re Oliver*,
183 B.R. 87 (Bankr. W.D. Pa. 1995) ........................................................ 26, 27

*Otal Invs. Ltd. v. M/V CLARY*,
673 F.3d 108 (2d Cir. 2012) ...................................................................... 5, 6

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) .............................................................................. 25, 26

*In re Source Enterprises, Inc.*,
No. 06-11707AJG, 2007 WL 2903954 (Bankr. S.D.N.Y. Oct. 1, 2007), aff'd, 392
B.R. 541 (S.D.N.Y. 2008) ............................................................................ 22

*In re The Free Lance-Star Publ'g Co. of Fredericksburg, VA*,
512 B.R. 798 (Bankr. E.D. Va. 2014) ........................................................... 26

*In Matter of The Watch Ltd.*,
257 F. App'x 748 (5th Cir. 2007) ................................................................. 21

*In re We Recycle!, Inc.*,
No. 09-22208(RDD), 2009 WL 6765348 (Bankr. S.D.N.Y. July 28, 2009) ....................... 22

*In re Zinke*,
97 B.R. 155 (E.D.N.Y. 1989) ......................................................................... 22

## Statutes

11 U.S.C. § 363 ............................................................................... 22, 23, 24

11 U.S.C. § 363(k) ............................................................................... 20, 30

11 U.S.C. § 363(m) ............................................................................... *passim*

11 U.S.C. § 522 ........................................................................................ 27

11 U.S.C. § 1123 ...................................................................................... 23

11 U.S.C. § 1123(a)(5) ............................................................................. 22

11 U.S.C. § 1129 ...................................................................................... 23

11 U.S.C. § 1129(a) ............................................................................. 20, 31

11 U.S.C. § 1129(a)(3) ........................................................................ *passim*

11 U.S.C. § 1129(b) .................................................................................. 31

11 U.S.C. § 1129(c) .............................................................................. 5, 31

11 U.S.C. § 1141...................................................................................... 23

11 U.S.C. § 1141(c)................................................................................. 23

15 U.S.C. § 11(a)..................................................................................... 12

15 U.S.C. § 31................................................................................... 15, 16

15 U.S.C. § 80a-9(d).................................................................. 10, 15, 17

28 U.S.C. § 158........................................................................................ 4

Appellee TH Holdco respectfully submits this brief in opposition to the Debtors' appeal of the July 6, 2022 *Findings of Fact, Conclusions of Law, and Order Confirming TH Holdco LLC's Second Amended Chapter 11 Plan, as Modified by this Order* (Dkt. 280; JA-003478-3601) (the "<u>Confirmation Order</u>") entered by the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), and in support hereof hereby adopts each of the arguments set forth in the *Brief of Appellee TH Holdco, LLC in Opposition to Brief of Appellant 85 Flatbush Mezz LLC* filed by 85 Flatbush Mezz LLC (the "<u>Mezzanine Lender</u>") in Case No. 7:22-cv-06233-CS (the "<u>TH Holdco Mezz Response</u>"), and respectfully requests the United States District Court for the Southern District of New York (this "<u>Court</u>") affirm the Confirmation Order.

## <u>PRELIMINARY STATEMENT</u>[1]

The Bankruptcy Court is a sophisticated court that has significant experience with Chapter 11 plan confirmations and intercreditor agreements, which by their nature, prioritize the interests of senior lenders following a borrower bankruptcy. The Bankruptcy Court demonstrated a clear understanding of the issues in the Bankruptcy Case and in the Adversary Proceeding, and the Debtors have failed to identify any evidence in the record that would suggest that the Bankruptcy Court committed a clear error of judgment in entering the Confirmation Order based on the facts before it. Since there is no evidence that would provide this Court with a definite and firm conviction that a mistake has been committed, the Bankruptcy Court's entry of the Confirmation Order should be affirmed.

The Debtors contend that the Bankruptcy Court erred in entering the Confirmation Order and overruling the Debtors' Confirmation Objection because the Bankruptcy Court did not first conduct an evidentiary hearing with respect to the value of the Property. This is incorrect. The

---

[1] Defined terms used here in have the meaning ascribed below.

Confirmation Hearing *was* an evidentiary hearing, and the Bankruptcy Court heard testimony from Franco Famularo of TH Holdco on the issues contested by the Debtors in their appeal, including issues relating to the value of the Property and TH Holdco's good faith in both purchasing the Mortgage Loan and in proposing the TH Holdco Plan. The TH Holdco Plan process provided the opportunity for an auction to be held in early August, after the *Debtors' broker* was allowed additional time to market the Property. Pursuant to Supreme Court precedent, this market test serves as the best evidence of the Property's value. The Bankruptcy Court correctly applied this Supreme Court precedent and made appropriate findings of fact that ultimately led to its overruling the Debtors' Confirmation Objection, and entry of the Confirmation Order. The Debtors have identified no clear error on the part of the Bankruptcy Court, and as such, the Bankruptcy Court's rulings should be affirmed.

Further, the Debtors' argument that the Adversary Proceeding must have been resolved prior to confirmation is baseless, as the Adversary Proceeding in no way affects the Debtors or their rights. The Debtors are not a party to or a beneficiary of the Intercreditor Agreement. They have no standing or basis to raise Intercreditor Agreement-based arguments in their appeal and have no say in who owns their debt.

Contrary to the Debtors' assertion, the Adversary Proceeding does not address whether TH Holdco has a legal obligation to sell the Mortgage Loan to the Mezzanine Lender or whether TH Holdco is the current holder of the Mortgage Loan. Rather, the Adversary Proceeding is about a host of other issues including whether the Mezzanine Lender was entitled to receive a purchase option notice under the terms of the Intercreditor Agreement, whether the Mezzanine Lender in fact did receive a purchase option notice, whether equity and the Intercreditor Agreement preclude Mezzanine Lender from exercising any purchase option right or consummating any purchase

option, and what the appropriate remedy might be under the terms of the Intercreditor Agreement and the law. There is no question that TH Holdco owns the Mortgage Loan. The Bankruptcy Court reviewed this issue early on and acknowledged as much. *See* Apr. 6, 2022 Hr'g Tr.; JA-000992 (15:16-19) (definitively concluding that TH Holdco, not the Mezzanine Lender, had standing). Indeed, at the Apr. 6 Hearing, the Court further stated, "[I]f there was a breach by the senior lender, at the time, which wasn't TH Holdco, of the purchase option provisions of the agreement . . ., it's hard to see how that would mean that another purchase from the senior lender, i.e., TH Holdco, would somehow not own the debt." *See id.* JA-000992-000993 (16:2-4). The Debtors have not presented any document or argument that proves otherwise. The simple fact remains that if Mezzanine Lender (or the Debtors' equity holders, for that matter) wanted to purchase the Property, they could have done so through the auction process provided for under the TH Holdco Plan.

Stated simply, the Debtors have had nearly two years to present a confirmable Chapter 11 plan for the Property. Despite recurring eleventh hour filings and repeated requests for the Bankruptcy Court to shorten notice so that the Debtors could have improperly-filed pleadings heard on hearing dates properly set by TH Holdco, the Debtors never pursued their original filed sale plan filed back in November 2021, and neither its first or second amended plans of reorganization were feasible or confirmable. Nor did the Debtors ever present an adequate disclosure statement that would allow for a potential plan to be confirmed under the Bankruptcy Code. In contrast, TH Holdco presented the only viable and confirmable plan in these Chapter 11 Cases – a plan that would provide prompt payment in full to all creditors of the Hotel and Residential estates holding allowed claims. The Bankruptcy Court correctly recognized this and appropriately confirmed the TH Holdco Plan without further delay. For all these reasons, and as

further set forth below, the Court must affirm the Bankruptcy Court's entry of the Confirmation Order.

## STATEMENT OF APPELLATE JURISDICTION

Appellee does not dispute the statements in the opening brief (the "<u>Debtors' Opening Brief</u>"; Case No. 7:22-cv-06241-CS, Dkt 9) of Appellants 85 Flatbush RHO Mezz LLC (the "<u>Mezzanine Debtor</u>"), 85 Flatbush RHO Hotel LLC (the "<u>Hotel Debtor</u>"), and 85 Flatbush RHO Residential LLC (the "<u>Residential Debtor</u>" and collectively with the Mezzanine Debtor and the Hotel Debtor, the "<u>Debtors</u>" or "<u>Appellants</u>") that (i) Appellants appeal from the Confirmation Order, (ii) the Debtors timely filed their notice of appeal on July 20, 2022 (Dkt. 286; JA-003695-003823), and (iii) the jurisdiction of the United States District Court of the Southern District of New York (this "<u>Court</u>") over appeals from final order of the Bankruptcy is conferred by 28 U.S.C. Section 158.

## STATEMENT OF ISSUES PRESENTED

1. Whether the Bankruptcy Court erred in overruling the Debtors' Confirmation Objection and entering the Confirmation Order before a final adjudication of the adversary proceeding captioned*: In Re 85 Flatbush Mezz LLC v. TH Holdco LLC*, Adv. Proc. No. 22-07022 (SHL).

2. Whether the Bankruptcy Court erred in overruling the Debtors' Confirmation Objection and entering the Confirmation Order finding that the TH Holdco plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected in "good faith" within the meaning of section 1129(a)(3) of the Bankruptcy Code – allegedly, in the Debtors' view – without taking evidence on the issue and having not adjudicated the Adversary Proceeding claiming TH Holdco improperly acquired its senior secured claim in violation of the ICA with the Mezzanine Lender.

3. Whether the Bankruptcy Court erred in entering the Confirmation Order finding TH Holdco was a good faith purchaser under 363(m) of the Bankruptcy Code when it had not yet adjudicated the Adversary Proceeding, the bid deadline had not yet passed and – allegedly, in the Debtors' view – the Bankruptcy Court did not take any evidence supporting the finding.

4.	Whether the Bankruptcy Court erred in overruling the Debtors' Confirmation Objection and entering the Confirmation Order – allegedly, in the Debtors' view – without first holding a hearing to establish the value of the Debtors' Property.

5.	Whether the Bankruptcy Court erred in overruling the Debtors' Confirmation Objection and entering the Confirmation Order – allegedly, in the Debtors' view – without first holding hearing to determine the allowed amount of TH Holdco's secured claim.

6.	Whether the Bankruptcy Court erred in entering the Confirmation Order – allegedly, in the Debtors' view – without providing the Debtors with an opportunity to confirm their own plan of reorganization and considering the preferences of the Debtors' creditors and equity security holders in accordance with 11 U.S.C. §1129(c).

## STANDARD OF REVIEW

Appellee does not dispute the standard of review summarized in the Debtors' Opening Brief. However, a finding of fact is clearly erroneous only if the Court is "left with the definite and firm conviction that a mistake has been committed." *In re Lehman Bros. 3 Holdings Inc.*, 855 F.3d 459, 469 (2d Cir. 2017); *see also In re Manville Forest Prod. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990) ("We must accept the bankruptcy court's findings of fact unless clearly erroneous."); *Otal Invs. Ltd. v. M/V CLARY*, 673 F.3d 108, 113 (2d Cir. 2012) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.") (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## STATEMENT OF THE CASE AND RELEVANT FACTS

### A.	The Senior Loan Documents & The ICA

The Mezzanine Debtor is the 100% owner of the Hotel Debtor and the Residential Debtor. Dkt. 152; JA-000197. The property is located at 85 Flatbush Extension, Brooklyn, New York (the "Property"). *Id.* The Property is a 132,641 square foot, twelve-story, mixed-use property consisting of a 174-room boutique hotel on the first six (6) floors known as the Tillary Hotel Brooklyn, a 58,652 square foot 64-unit luxury multi-family building and a 5,642 square foot

parking garage (together, the "Hotel Property"). *Id.* The residential component of the Property has nine (9) studios, twenty-six (26) one-bedroom units, and twenty-nine (29) two-bedroom units (together, the "Residential Property"). *Id.*

The Property was acquired on September 19, 2019. *Id.* at JA-000195. The original senior lender, 85 Flatbush Avenue 1, LLC ("Original Senior Lender"), through an assignment of mortgage from CMTG JP Finance, extended to Hotel Debtor and Residential Debtor a loan in the original principal amount of $57,500,000 plus a new advance in the amount of $12,500,000 for a total principal loan amount of $70,000,000 evidenced by a consolidated, amended and restated note and consolidated, amended and restated mortgage and security agreement, which was assigned to TH Holdco on January 28, 2022 (the "Mortgage Loan", and the related documents, the "Senior Loan Documents") and is secured by the Hotel Property and the Residential Property. *Id.* at JA-000198. The Mortgage Loan term was for twenty-four (24) months, with a maturity date of October 1, 2021. *Id.* That maturity date has not been extended. *Id.*

On September 19, 2019, the Mezzanine Lender advanced a loan to 85 Flatbush RHO Mezz in the original principal amount of $6,000,000 secured by the 85 Flatbush Hotel Pledge Agreement and 85 Flatbush Residential Pledge Agreement (the "85 Flatbush Mezz Loan Agreement"). *Id.*

Original Senior Lender and the Mezzanine Lender entered into an Intercreditor Agreement dated September 19, 2019 and amended as of July 23, 2020 (the "Intercreditor Agreement" or "ICA"; Case No. 22-07022, Dkt. 16; THS000638-000851) which sets forth certain rights between the senior loan and the mezzanine loan. Original Senior Lender's interest and rights under the ICA are now assigned to TH Holdco. Dkt. 285; JA-003731. The key provisions of the ICA, including those that reaffirm the superiority of the Senior Loan and subordinate Mezzanine Lender's rights, are quoted and discussed in the TH Holdco Mezz Response and incorporated herein by reference.

The Debtors stopped paying their monthly debt service obligations to Original Senior Lender and, on April 2, 2020, Original Senior Lender sent a notice to the Debtors advising them that certain Events of Default existed under the Senior Loan Documents. Case No. 22-07022, Dkt. 6; THS000927 at ¶ 85. Mezzanine Lender was copied on the April 2, 2020, notice. *Id.* On July 16, 2020, Original Senior Lender sent a separate notice to Mezzanine Lender informing Mezzanine Lender of those Events of Default and providing Mezzanine Lender with five days to cure those Events of Default by remitting to Senior Lender the aggregate amount of $368,272.22. *Id.* at ¶ 86. But Mezzanine Lender did not avail itself of this right. *Id.* at ¶ 87.

On July 22, 2020, Original Senior Lender sent a notice to borrowers (now the Debtors) informing them that, because the Events of Default had not been cured, Original Senior Lender was accelerating the indebtedness. *Id.* at ¶ 88. Mezzanine Lender was also copied on that notice. *Id.*

**B.      Key Postpetition Developments**

On December 18, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court (the "Chapter 11 Cases"). *Id.*

**i.      Cash Collateral**

On the Petition Date, the Hotel Debtor filed a *Motion to Use 85 Flatbush Avenue's Cash Collateral*. *See* Dkt. 64; JA 000065-000083. On March 29, 2021, the Bankruptcy Court entered a *Final Consent Order Authorizing the Use of Cash Collateral and Granting Adequate Protection between the Debtors and 85 Flatbush Avenue* (the "Agreed Final Cash Collateral Order"). *Id.* at JA-000074-000075. The Agreed Final Cash Collateral Order is now a Final Order.

The Agreed Final Cash Collateral Order provided certain acknowledgements and rights of the senior lender, which are now held by TH Holdco as successor to the Original Senior Lender. *Id.* Per the Agreed Final Cash Collateral Order the Debtors agreed that as of Petition Date, the principal amount of the senior lender's claims against the estates was $85,158,815.99 and further agreed the claim consists of, among other things, default interest, legal fees, and late fees. *Id.* The Debtors' also agreed that the claim will continue to accrue interest and additional charges pursuant to and under the Senior Loan Documents. *Id.*

ii.     **The Debtors' Chapter 11 Plan Exclusivity Periods**

The Debtors' exclusive right to file a chapter 11 plan has expired in these Chapter 11 Cases by agreement of the key parties. On September 21, 2021, the Bankruptcy Court entered the last *Order Extending Exclusive Right to File a Plan of Reorganization and to Solicit Acceptances for the Debtors' Plan and For Related Relief* [Dkt. 125; THS000001-000003], which extended the Debtors' exclusive right to file a chapter 11 plan through November 24, 2021 (the "Exclusivity Period"), and provided that if the Debtors filed a chapter 11 plan during the Exclusivity Period, they would have the exclusive right to solicit acceptances for such plan through January 24, 2022 (the "Acceptance Period"). *Id.*

On November 24, 2021, the Debtors filed its original plan [Dkt. 142; JA-000097-000140] (the "Debtors' Original Plan"). The Debtors' Original Plan was based on a sales process including an opportunity for the holder of senior mortgage debt or its nominee to credit bid and is in many ways similar to TH Holdco's Second Amended Plan [Dkt. 211; JA-002452-002493] (the "TH Holdco Plan"). Debtors, however, never filed a disclosure statement related to the Debtors' Original Plan, solicited acceptance of that plan, or sought a further extension of the Acceptance Period. Therefore, the Exclusivity Period and the Acceptance Period both expired.

### iii.    JLL Retained as Broker and Markets the Property

In September 2021, Jones Lang LaSalle ("JLL"), a well-known commercial broker active in the hotel industry, was retained by the Debtors pursuant to an order of the Bankruptcy Court (JA-000084-000096) and conducted a marketing process which the Debtors summarize as follows:

> JLL launched their marketing efforts on October 12, 2021, creating and establishing a data room for interested parties which was accessible immediately upon their executing a confidentiality agreement. A total of 69 confidentiality agreements were executed and JLL conducted 14 tours of the Hotel Property and the Residential Property. The marketing period continued through November 17, 2021. A total of six (6) written offers were received, that were later narrowed down to three (3) potential purchasers for the Hotel Property and the Residential Property ranging from $80,000,000 to $86,500,000.

Dkt. 242; JA-003218-3232.

### C.    TH Holdco's Plan, Mezzanine Lender's Objection, and the Adversary Proceeding

### i.    Procedural Background

Additional information on the TH Holdco Plan, Mezzanine Lender's Objection, and the Adversary Proceeding is presented in the TH Holdco Mezz Response and incorporated herein by reference.

### ii.    Bankruptcy Court Hearings

On April 6, 2022, shortly after the commencement of the Adversary Proceeding, Judge Drain held a hearing in connection with these proceedings (the "April 6 Hearing"). Apr. 6, 2022 Hr'g Tr.; JA-000978-001031. At that hearing, he noted the position asserted by Mezzanine Lender in the Mezz Objection was that TH Holdco could not seek confirmation of a plan that contemplated a substantial credit bid without resolving the Adversary Proceeding. *Id.* at JA-000986 (9:4-10). However, Judge Drain stated that "I have a hard time seeing that, having read the [ICA] and the limitation on the Mezzanine Lender's rights under it. . . . I'm having a hard time seeing how resolution of that claim is a gating item for proceeding with TH Holdco's proposed plan," and he

cited the restrictions set forth in Section 9(d) as the basis for his skepticism. *Id.* at JA-000986-00988 (9:7-10, 17-19; 10:22-11:18); *see also id.* at JA-000988 (11:13-17) ("[Mezzanine Lender's] remedies are limited by the inter-creditor agreement, and more specifically, Section 9. So, [Mezzanine Lender] may have a monetary claim against TH Holdco that will have to get resolve in some form, but I'm not sure why [the Adversary Proceeding]'s a gate-keeping item.").

At a subsequent hearing on May 16, 2022 (the "May 16 Hearing"), Judge Drain further articulated his rationale, stating that:

> I don't think the [Adversary Proceeding is] a showstopper to let, from letting the disclosure statement go out or scheduling the confirmation hearing. Again, because of the inter-creditor agreement's limitations in Section 9 -- what is it 9(d) I think. . . . Yes, 9(d). I mean, you can't object to their claim [or] challenge the validity of their claim. So you can't, that's the basis for objecting to the credit bid is that the claim isn't a claim. So I think the lawsuit is about money, not about the validity of a claim.

May 16, 2022 Hr'g Tr.; JA-002381 (34:5-15); *see also id.* at JA-002382 (35:4-6, 15-21) ("I'm not prepared to say that confirmation will be delayed until there's a determination in the adversary proceeding. . . . [M]y focus here is less on the merits of the litigation. . . . My focus is on the other provisions of the intercreditor agreement that limit what the Mezzanine Lender can do in a bankruptcy case."). In light of that conclusion, Judge Drain proceed with scheduling a hearing on the confirmation of the plan for June 30, 2022 (the "Confirmation Hearing") prior to resolving the Adversary Proceeding. JA-002399. Notably, from the date of the May 16 Hearing to the date of the Confirmation Hearing, Mezzanine Lender took no steps whatsoever to prosecute the Adversary Proceeding.

At the Confirmation Hearing, Judge Drain heard argument on the Debtors' confirmation objection [Dkt. 229; JA-002896-002920] (the "Debtors' Confirmation Objection"), including

extensive discussion regarding Mezzanine Lender's position that Section 9(d) was not enforceable here and did not preclude Mezzanine Lender from objecting to confirmation and voting against the Plan. Confirmation Hr'g Tr.; JA-003624-003639 (21:2-36:9); JA003643-3644 (40:3-41:24). Following argument, Judge Drain issued an oral ruling rejecting that argument and finding, instead, that (i) the ICA is binding; (ii) Mezzanine Lender would therefore need to "show that it is relieved under some applicable principle from it"; (iii) Mezzanine Lender had not done so; and (iv) TH Holdco therefore was entitled to vote in favor of the Plan on Mezzanine Lender's behalf. Confirmation Hr'g Tr.; JA-003640-003642 (37:12-15, 39:13-16).

###   iii.    The Plan and Sale Process

The Plan provides for the sale of the Property under the Purchase Agreement to (i) TH Holdco for the purchase price consisting of the TH Holdco credit bid or, (ii) in the event that another bidder submits a higher and better bid at the Auction which is approved by the Bankruptcy Court, to the higher bidder for such amount. Dkt. 201; JA-002018-002019. After two months of further marketing, no higher and better bid for the Property was submitted to JLL by the bid deadline of July 29, 2022. Case No. 7:22-cv-06241-CS, Dkt. 9 at 24.

## ARGUMENT

## I.    The Bankruptcy Court Correctly Overruled the Debtors' Confirmation Objection and Entered the Confirmation Order.

The Debtors' arguments appear motivated by the idea that the Adversary Proceeding can be resolved in a way that allows the Debtors to preserve equity interest in the Property for old equity.[2] But wishing it so does not make it so. The Bankruptcy Court was not required to delay

---

[2] The Debtors are the bankruptcy estates and are fiduciaries to the creditors. *See In re JTR Corp.*, 958 F.2d 602, 604 (4th Cir.1992) (noting that a debtor in possession must act in the interest of creditors as the position is one of a fiduciary and the debtor in possession "owes the same duties as a trustee"). The Debtors are not the same as old

confirmation of the Chapter 11 Cases in order to allow the Mezzanine Lender to pursue an action it contractually agreed it would not commence, and a remedy (*i.e.*, the purchase of the Senior Loan at the price that would have been available two years earlier[3]) that is inconsistent with the ICA. The Bankruptcy Court is a sophisticated court and has significant experience with intercreditor agreements. Its legal analysis was sound and its entry of the Confirmation Order should be affirmed.

The Debtors assert that the Bankruptcy Court's failure to finally adjudicate the Adversary Proceeding prior to entering the Confirmation Order irreparably harms both the Debtors and the Mezzanine Lender.[4] It is unclear how the Debtors are harmed here, as they are supposed to be fiduciaries to the creditors, not old equity. Further, and more importantly, the Debtors are not a party to or a beneficiary of the ICA. They have no standing or basis to raise ICA-based arguments in their appeal and, therefore, their arguments based on the ICA should be disregarded. *In re Kors*, 819 F.2d 19, 22 (2d Cir. 1987) (holding that a subordination agreement may only be enforced by

---

equity or insider claims – neither insider claimants nor equityholders objected to confirmation or filed an appeal of the Confirmation Order.

[3] The Mezzanine Lender has repeatedly asserted that it has a right to purchase the Mortgage Loan at the July 2020 price. It does not have that right under the ICA, because the Loan Purchase Price definition in the ICA requires the price be calculated as of closing, which makes sense, as TH Holdco would most certainly be harmed as it would be denied payment of over two years of unpaid interest payments on the loan as well as its attorneys' fees pursuing its credit bid rights in these cases. TH Holdco purchased the Mortgage Loan on January 28, 2022, and by that time a significant amount of interest had accrued. Mezzanine Lender's purchase of the Mortgage Loan from TH Holdco now at the July 2020 price would clearly have an adverse effect on TH Holdco as that price would be insufficient to payoff TH Holdco. Again, and as set forth in more detail in the TH Holdco Mezz Response, this result is specifically precluded by the terms of the ICA, which says "The failure of Senior Lender to provide a Purchase Notice to Mezzanine Lender regarding the occurrence of a Purchase Option Event shall have no adverse effect on Senior Lender other than the resulting extension of the time in which the Purchase Notice may be given." THS000680 (ICA § 11(a)).

[4] The Debtors also make equitable mootness arguments if the Confirmation Order is affirmed. However, the potential mootness of an appeal does not constitute irreparable harm and is insufficient to prevent a plan or sale from proceeding. *In re Best Prods. Co.*, 177 B.R. 791, 808 (S.D.N.Y.1995) *aff'd on other grounds*, 68 F.3d 26 (2d Cir.1995); *see also In re Moreau*, 135 B.R. 209, 215 (N.D.N.Y.1992); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007) ("A majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm."); *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG), 2022 WL 2657345, at *5 (Bankr. S.D.N.Y. July 8, 2022) (citing *Williams v. George Junior Republic* (*In re Cujas*), 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007).

the parties entitled to priority under that agreement); *Krafsur v. Scurlock Permian Corp.* (*In re El Paso Refinery, L.P.*), 171 F.3d 249, 257 (5th Cir. 1999) (finding neither debtor nor trustee had standing to enforce intercreditor agreement terms because they were not a party to the agreement).

To the extent the Court considers the Debtors' arguments, however, such arguments fail. First, the Debtors' argument is premised on their contention that TH Holdco did not have standing to propose and confirm a plan because the Mezzanine Lender *might* prevail on the Adversary Proceeding at some point in the future and *might* at that point become the holder of the senior debt *if* it exercises the purchase option at the contractually determined price *and actually* closes. But as noted above, the Bankruptcy Court rejected this argument early on when it correctly determined that TH Holdco was the current owner of the claim with credit bid rights. At the April 6 Hearing, the Bankruptcy Court said "as far as standing is concerned, today, the senior lender, TH Holdco, has standing, because it's the owner of the claim." *See* Apr. 6, 2022 Hr'g Tr.; JA-000992 (15:17-19). The Bankruptcy Court added, with respect to the Mezzanine Lenders' claimed rights under the ICA that "[n]one of those rights [that the Mezzanine Lender purports are owed to it] are spelled out in the intercreditor agreement, so people need to figure out what they are. But I think the most extreme one would be to say that notwithstanding having spent millions of dollars to buy the claim from the Flatbush senior lender, TH Holdco doesn't have a claim. I mean, that's pretty farfetched to me." *Id.* at JA-000993 (16:7-12).

Second, the Debtors (like the Mezzanine Lender) contend that the Adversary Proceeding was a gating issue that required resolution before the Confirmation Order could be entered. In doing so, the Debtors seem to argue that confirmation should not have happened without the Bankruptcy Court first determining on a final basis whether the Mezzanine Lender had a right to purchase the Mortgage Loan if the Mezzanine Lender were to prevail in the Adversary Proceeding.

The Debtors contend that if the Mezzanine Lender were to have this right, then the Mezzanine Lender would be in a position to propose a plan of reorganization (presumably one that would have been favorable to the Debtors), and TH Holdco would suffer no adverse impact, as TH Holdco would be paid off in the Debtors' contorted view of what constitutes payment in full of the senior debt. The Mezzanine Lender also asserted that the Adversary Proceeding is gating issue during the Confirmation Hearing.

These arguments were summarily dismissed by the Bankruptcy Court:

> I don't see that as a gating issue. [The Adversary Proceeding] hasn't been in the two years of this case brought anywhere close to a conclusion, and I don't think that in light of that the party who I think had the onus to bring it to something [*i.e.*, the Mezzanine Lender], at least a lot closer to conclusion than we have here, can say that they can keep the gate shut. They have rights. They can assert a claim as they have against the senior lender, and they might have a remedy for that. But as far as saying that they have standing, they haven't proven it and they haven't come-- even pursuing it. I mean, it's just -- it's just, you know, I don't have a pre-trial order from them yet.

Confirmation Hr'g Tr.; JA-003669 (66:14-25). The Bankruptcy Court further explained:

> Okay, and again my focus here is less on the merits of the litigation. And on that point, we'll discuss this more when we get to the pretrial. But I think there are certain aspects of the merits that may well require a fair amount of discovery and trial. My focus is on the other provisions of the inter-creditor agreement that limit what the Mezzanine Lender can do in a bankruptcy case. And they're specific, I think. So to me that's the issue that would be litigated at confirmation. Not the merits of the underlying claim. It's, you know, can you raise this in the context of confirmation, in light of those limitations. Or can it only be raised in a suit for money for a lost opportunity to exercise an option. Which maybe actually properly raised in State Court instead of in Federal Court. Because it doesn't really affect the auction or the confirmation hearing, it's just a monetary claim between two non-debtors. So I think the language that is in the disclosure statement on this point is okay. I don't think we need to say, in fact I think we shouldn't say further that the Court won't consider confirmation until the issues in the adversary proceeding are resolved. We can say something to the effect that the Court leaves open for a hearing at confirmation whether the adversary proceeding can serve any basis to delay confirmation.

May 16 Hr'g Tr.; JA-002382-002383 (35:15-36:14).

As the present holder of the senior debt, TH Holdco had the right to exercise all of its remedies under the ICA, the Senior Loan Documents and the Bankruptcy Code absent (i) the Mezzanine Lender actually prevailing in the Adversary Proceeding and actually exercising the purchase option and paying the contractually required Loan Purchase Price (as defined in the ICA) or (ii) a temporary restraining order and preliminary injunction (likely with a sizeable bond requirement) having been obtained by the Mezzanine Lender in the Adversary Proceeding.

Thus, contrary to the Debtors' assertions (Debtors' Opening Brief at 34-35), the Bankruptcy Court was not inconsistent regarding the timing of the Adversary Proceeding. Rather, the Bankruptcy Court limited the scope of what could be argued at the Confirmation Hearing and simultaneously gave the Mezzanine Lender what should have been plenty of time to wrap up the Adversary Proceeding (or at least make substantial progress thereon) prior to the Confirmation Hearing, which is what the Mezzanine Lender had previously stated on the record it could do (but then failed to do as a tactical decision that backfired).

In any event, and most importantly, in order for the Debtors' argument to succeed, the ICA that lies at the heart of the Adversary Proceeding would need to include a remedy that allows the Mezzanine Lender to become the holder of the Mortgage Loan. It does not because all actions of the Mezzanine Lender, including any action to object, oppose, hinder, contest, interfere, enjoin or restrain, including through the exercise of remedies including specific performance, are expressly barred by the terms of the ICA under the current circumstances (i.e. one where (i) a borrower bankruptcy has occurred, (ii) TH Holdco, as senior lender, is exercising its rights and remedies under the underlying Senior Loan Documents[5], and (iii) Mezzanine Lender has committed an event of default under the ICA). *See* ICA Sections 9(d) and 31.

---

[5] Section 31 of the ICA says "Notwithstanding the foregoing, if Senior Lender shall exercise any right or remedy under the Senior Loan Documents that is not in violation of this Agreement, including without limitation, any

The Bankruptcy Court's comments at the Confirmation Hearing demonstrate that the Bankruptcy Court was aware of and considered relevant, and strikingly similar case law on this issue. *See* JA003641 (38:5-10) (citing *Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re Ion Media Networks, Inc.),* 419 B.R. 585, 5998 (Bankr. S.D.N.Y. 2009), wherein Judge Peck found "Throughout these cases, the right of [second lien lender] to participate has been an issue that has been raised as an issue on a number of occasions but has not been pressed to the point of silencing [second lien lender]. Even as these cases are poised for confirmation of the Plan, [second lien lender] despite the contractual restrictions on creditor action and its lack of standing, has presumed to act as if it has the right to be heard. It does not."). The Bankruptcy Court correctly recognized that the terms of the ICA, including in Section 31 and Section 9(d), limit the actions the Mezzanine Lender can take, including against the Senior Lender, in these circumstances and thus properly concluded in its discretion that TH Holdco did not have to wait until after full adjudication the Adversary Proceeding to pursue its rights under the ICA and underlying Senior Loan Documents through its proposed plan and credit bid. *See also Gropper v. David Ellis Real Est., L.P.*, No. 13 CIV. 2068 ALC JCF, 2013 WL 3892899, at *1 (S.D.N.Y. July 29, 2013) ("A stay [of one proceeding in favor of another] is not a matter of right . . . . It is instead an exercise of judicial discretion, and the propriety . . . is dependent upon the circumstances of the particular case." (citing *Nken v. Holder*, 556 U.S. 418, 433 (2009))) (denying stay); *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("The controversy hinges upon the power of a court to stay proceedings in one suit until the decision of another, and upon the propriety of using such a power in a given situation. . . . Only in rare circumstances will a litigant in one [suit] be compelled to

---

Enforcement Action, Mezzanine Lender agrees not to object to, oppose, hinder, contest, interfere with or seek to enjoin or restrain any such action (whether through remedies of injunction, declaratory judgment or specific performance, the filing of a lis pendens, or otherwise) in violation of this Agreement, all of which remedies are hereby waived." *See* THS000690.

stand aside while a litigant in another settles the rule of law that will define the rights of both.");

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (identifying abuse of

discretion as standard of for court's decisions regarding the timetable of two pending cases).

The Bankruptcy Court's view on the Mezzanine Lenders' potential remedies was

consistent throughout the Chapter 11 Cases. At the April 6 Hearing, the Court found that the

Mezzanine Lender's remedies "are limited by [the] inter-creditor agreement, and more specifically

Section 9. So, it may have a monetary claim against TH Holdco that will have to get resolved in

some form, but I'm not sure why it's a gate-keeping item." Apr. 6 Hr'g. Tr.; JA-000988 (11:13-

17).

> At the Confirmation Hearing, the Bankruptcy Court added:
>
> I find it very hard to believe that the Mezzanine Lender can defeat the senior
> lender's exercise of its rights under the intercreditor agreement, including Section
> 9D, at this stage of the case. I will note further that the purchase option section
> does state in paragraph 11A:
>
> "The failure of senior lender to provide a purchase notice to mezzanine lender
> regarding the occurrence of a purchase option event shall have no adverse effect on
> senior lender other than the resulting extension of the time in which the purchase
> notice may be given."

Confirmation Hr'g Tr.; JA-003641-003642 (38:20-39:5) (citing ICA §11A). The Court further

added that even if the Court's holdings were wrong with respect to the Mezzanine Debtor, TH

Holdco's Plan constituted three separate plans – one for each of the three Debtors – and therefore

"the plan would still go forward as to [the Hotel Debtor and the Residential Debtor]." *Id.* at JA-

003642 (39:23-24).

Lastly, the Debtors argue that in granting the limited 60 day stay pending appeal, which

occurred after entry of the Confirmation Order, the Bankruptcy Court gave credence to their

argument that the Mezzanine Lender can step into TH Holdco's shoes. During a conference call

with this Court on September 2, 2022, however, the Debtors and the Mezzanine Lenders succeeded in having any act of the Bankruptcy Court taken after entry of the Confirmation Order stricken from the record. As such, the Debtors cannot now assert and rely on a mischaracterization of the Bankruptcy Court's ruling at that hearing.[6]

## II.     The Bankruptcy Court Correctly Found that the TH Holdco Plan Was Proposed in "Good Faith" Within the Meaning of Section 1129(a)(3) of the Bankruptcy Code.

As the Debtors' acknowledge, §1129(a)(3) of the Bankruptcy Code requires a plan to be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. §1129(a)(3). A court will make this finding if the plan "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *In re Argo Fund Ltd. v. Bd. of Dirs. of Telecom Arg., S.A. (In re Bd. of Dirs. of Telecom Arg., S.A.*), 528 F.3d 162, 174 (2d Cir. 2008); *In re Koelbl*, 751 F. 2d 137, 139 (2d Cir. 1984). "A finding of good faith will not be overturned unless the opponent of the plan can show that the finding was clearly erroneous." *Id.* (citation omitted). Here, the Bankruptcy Court's factual finding that the TH Holdco Plan was proposed in good faith was appropriate and is supported by the weight of the evidence. The Debtors have not established that the Bankruptcy Court's conclusion rises to the level of clear error.

Although the Debtors proffered a convoluted line of reasoning, that TH Holdco could not have been a "legitimate plan proponent" under §1129(a)(3) because of some *future-but-uncertain* set of events that could somehow retroactively negate TH Holdco's present senior lien position, the Bankruptcy Court declined to credit such unsupported allegations. In any event, such arguments cannot defeat a good faith finding, as the question of which party is the proper plan proponent based on future adjudication of the Adversary Proceeding has nothing to do with

---

[6] While Judge Robert Drain presided over the Bankruptcy Cases from inception through confirmation, he retired on the Confirmation Hearing date and as a result Judge Sean Lane heard and decided the Motion for a Stay Pending Appeal.

whether the TH Holdco Plan was in fact proposed in good faith. The good faith standard deals with a party's conduct, its forthcoming dealings with the Court, and the parties in interest and its intention in the bankruptcy case. *See In re Ditech Holding Corp.*, 606 B.R. 544, 603 (Bankr. S.D.N.Y. 2019) (analyzing record which demonstrated plan proponent conducted comprehensive sale process with good intentions and addressed various stakeholders' concerns); *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010) (stating that section 1129(a)(3) "speaks more to the process of plan development than to the content of the plan" and that "[t]he bankruptcy judge is in the best position to assess the good faith of the parties' proposals.").

The Bankruptcy Court looked closely at the parties' actions in these Chapter 11 Cases as discussed below. A review of the Bankruptcy Court hearing transcripts shows that the Bankruptcy Court's findings of good faith are well supported by the record.

For instance, the issue of good faith arose at the April 6 Hearing, when the Debtors and Mr. Hager (one of the Debtors' principals) initially raised issues about alleged interference by TH Holdco during the Debtors' marketing process. The Bankruptcy Court took that allegation very seriously and ordered the parties to schedule a case conference where the Bankruptcy Court could interrogate the parties on what happened. *See* Apr. 6, 2022 Hr'g Tr.; JA-000995 (18:10-17). All parties appeared for that case conference on May 16, 2022, where the Bankruptcy Court asked the Debtors whether they felt the sale process had been flawed. May 16 Hr'g Tr.; JA-002356-002357 (9:24-10:2). Neither the Debtors nor the Mezzanine Lender raised any specific allegation against TH Holdco and in fact, the Debtors represented to the Court that it was comfortable allowing the sale process to proceed. *Id.* at JA-002357 (10:3-19). Indeed, it was very similar to the sale process that the Debtors envisioned in the Debtors' Original Plan. JA-000097-000140. The Bankruptcy Court also asked JLL, as broker, whether TH Holdco violated a non-disclosure agreement or some

other agreement relating to the sale process by buying the Mortgage Loan, as opposed to putting in a bid for the Property. *Id.* at JA-002358 (11:1-5). JLL told the Bankruptcy Court that TH Holdco was not a party to any non-disclosure agreement and therefore, no non-disclosure agreement was violated. *Id.* at 11:10-12. As a result of the parties' representations, the Bankruptcy Court advised that its concerns were answered (*id.* at 13-14) and the Court proceeded to approve TH Holdco's Disclosure Statement along with a detailed set of Sale and Bid Procedures and a form of Purchase Agreement, both reflecting the feedback of Debtors' counsel. *Id.* at JA-002383 (36:16-18).

The Bankruptcy Court also addressed the good faith issue at the Confirmation Hearing. The evidence presented on the record there further supports the Bankruptcy Court's factual findings of good faith in the Confirmation Order. Specifically, TH Holdco submitted into evidence three declarations of Franco Famularo including the §363(k) Declaration, which specifically refuted allegations of bad faith, and the Disclosure Statement Declaration, which addressed how TH Holdco came to purchase the Mortgage Loan. Confirmation Hr'g TR.; JA-003646. The Bankruptcy Court again concluded on the record that it found no evidence of misconduct by TH Holdco (Confirmation Hr'g Tr.; JA-003685-003686 (83:1-5), including with respect to how TH Holdco came to purchase the Mortgage Loan, and no evidence that TH Holdco violated §1129(a) of the Bankruptcy Code. Judge Drain, who reviewed the declarations of Mr. Isaac Hager cited by the Debtors in their Opening Brief for the proposition that TH Holdco had misled the Debtors regarding a "plan sponsor arrangement or some form of joint venture", discounted the credibility of such statements and concluded "the evidence before me shows that [TH Holdco] has not engaged in any [misconduct]; didn't violate any non-disclosure agreements. I frankly don't believe that it had violated any promise of commitment to the debtor or the debtor's owner." *Id.*

The Bankruptcy Court read directly from the May 16 hearing transcript on this point and stated that the Court was guided on the issue by the prior testimony of the parties. *Id.* at JA-003670-003673 (67:11-70:20). The Bankruptcy Court added, "There is nothing in the bankruptcy code or the case law that precludes a loan-to-own strategy", and added that the Court found Mr. Famularo and his testimony to be credible. *Id.* at JA-003674 (74:4-9). The Bankruptcy Court further recognized that the TH Holdco Plan was proposed to effectuate the purpose of the Bankruptcy Code to maximize value for creditors. *Id.* at JA-003685 (82:5-21). This Court should defer to the factual determinations of the Bankruptcy Court including as to the credibility of Mr. Famularo and Mr. Hager.

The Debtors have failed to identify any potential bad faith issue that was not considered by the Bankruptcy Court and did not present any new evidence at the Confirmation Hearing that would establish bad faith on the part of TH Holdco. The Debtors, therefore, have failed to show that the Bankruptcy Court clearly erred in issuing its good faith finding in the Confirmation Order. As such, the Bankruptcy Court's entry of the Confirmation Order should be affirmed.

## III.   **The Bankruptcy Court Correctly Found that TH Holdco was a Good Faith Purchaser under § 363(m) of the Bankruptcy Code.**

On appeal, the Debtors argue that the Bankruptcy Court's §363(m) finding was "procedurally improper and entirely premature." Debtors' Opening Brief at 43. However, the Bankruptcy Court correctly decided that TH Holdco was a good faith purchaser under §363(m), and the Debtors waived any argument against the Bankruptcy Court's §363(m) finding when they failed to raise it before the Bankruptcy Court in their Confirmation Objection or at the Confirmation Hearing. *In re Nortel Networks Secs. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) (an appellate court will not consider an issue raised for the first time on appeal); *In Matter of The Watch Ltd.*, 257 F. App'x 748, 750 (5th Cir. 2007) (a challenge under a §363(m) "may not be

raised for the first time on appeal to the district court."); *see also In re Zinke*, 97 B.R. 155, 156–57

(E.D.N.Y. 1989) ("Appellant has never raised any factual issue regarding the purchaser's good

faith: not in its written objections to the sale filed with the bankruptcy court on November 13,

1987, not during the hearing held on November 17, 1987, and not in the papers filed in this

appeal."). Thus, this Court should not consider this argument raised by the Debtors for the first

time on appeal.

Moreover, the Debtors' argument is incorrect, as the Court's determination with respect to

§363(m) was both procedurally proper and ripe for decision.

The Bankruptcy Code provides several avenues for selling a debtor's property, including

under §363 and under §1123(a)(5). Findings and authorizations under the two sections are not

mutually exclusive. Section 363 of the Bankruptcy Code not only authorizes the use, sale or lease

of property of the estate, but it also affords the purchasers of a debtor's assets protection from a

reversal of the sale on appeal, so long as the purchaser acted in good faith. 11 U.S.C. §363(m);

*see also Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci*), 126 F.3d 380, 387 (2d Cir. 1997).

Contrary to the Debtors' assertions, §363(m) protections are routinely granted under plans. *See*

*e.g.*, *In re Equan Realty Corp.*, No. 08-14017(RDD), 2009 WL 7193572, at *1 (Bankr. S.D.N.Y.

Dec. 17, 2009) (approving §363(m) protections for sale under plan); *In re Delphi Corp.*, No. 05-

44481RDD, 2009 WL 2482146, at *21 (Bankr. S.D.N.Y. July 30, 2009) (same); *In re We Recycle!,*

*Inc.*, No. 09-22208(RDD), 2009 WL 6765348, at *7 (Bankr. S.D.N.Y. July 28, 2009) (same); *In*

*re Source Enterprises, Inc.*, No. 06-11707AJG, 2007 WL 2903954, at *6 (Bankr. S.D.N.Y. Oct.

1, 2007), aff'd, 392 B.R. 541 (S.D.N.Y. 2008) ("Therefore, the Plan has been proposed in good

faith, as such term is used in Sections 1129(a)(3) and 363(m) of the Bankruptcy Code."); *In re*

*C.C. Ming (U.S.A.) Ltd. P'ship*, No. 03-13369 (BRL), 2005 WL 3782590, at *3 (Bankr. S.D.N.Y.

Apr. 25, 2005) ("Hort First Avenue Holdings, LLC or its designee is a purchaser for good faith and entitled to the protections of section 363(m) of the Bankruptcy Code.").

Similar to the §1129(a)(3) good faith analysis discussed above, under §363(m), the "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is only lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* at 390.

For the reasons stated in Section II above, TH Holdco is a good faith purchaser under both §1129(a)(3) and §363(m). However, while TH Holdco believes the Bankruptcy Court's finding that TH Holdco was a good faith purchaser under §363(m) was appropriate, such a finding was not actually required for the confirmed Plan to go effective under §§1123, 1129, and 1141 of the Bankruptcy Code, as discussed more fully below.

The Debtors cite *In re Ditech Holding Corp.*, 606 B.R. 544, 578 (Bankr. S.D.N.Y. 2019) to support its argument that purchasers under plans cannot receive §363(m) protection. *See* Debtors' Opening Brief at 43-44 (claiming that the Confirmation Order cannot make a §363(m) good faith purchaser finding because the sale is governed by § 1129, not §363, and there was no underlying §363 motion). This is not correct. *Ditech* stands for the proposition that while §363 protections *may* be included in a plan, complying with certain other limitations under §363 is not mandatory if the debtor chooses not to incorporate such §363 limitations into the plan or confirmation order. Here, TH Holdco has tailored the TH Holdco Plan in such a way as to provide §363(m) protections while not being limited to the other subsections of §363 because TH Holdco specifically submitted itself to the more strenuous requirements under §§1123, 1129, and 1141(c).

Thus, even if this Court reverses and remands on the §363(m) finding, the Confirmation Order still stands and is effective.

At the Confirmation Hearing, the Bankruptcy Court had before it everything necessary to make a §363(m) finding as to TH Holdco, the stalking horse purchaser pursuant to the TH Holdco Plan. As the prime example, pursuant to the Bidding Procedures, TH Holdco had a signed Purchase Agreement on file with the Bankruptcy Court based on the model Purchase Agreement form approved during the May 16, 2022 Disclosure Statement hearing. Therefore, as to TH Holdco's bid, there was a sufficient record to make a §363(m) good faith finding and there was no need to wait to see if other bids were submitted by the July 29, 2022 bid deadline to make that finding. Under the Plan, TH Holdco was immediately entitled to close its credit bid if there were no higher and better bids submitted by the July 29, 2022 bid deadline (as turned out to be the case). *See* JA-002452-002493; JA-003478-JA-003601. Thus, it is incongruous to say that the Court's good faith purchaser finding was premature. *See also In re Gucci*, 126 F.3d 380, 389 (2d Cir. 1997) (noting that while "[b]ankruptcy courts routinely make a finding of good faith at the time of the §363 sale approval" the Second Circuit has not required it to occur at the time of closing). It is difficult to comprehend what subsequent facts could have changed the Bankruptcy Court's good faith analysis after the date the Confirmation Order was entered. Regardless, no such facts have arisen, nor have the Debtors so alleged. Rather, all that occurred after entry of the Confirmation Order was JLL's continued marketing of the Properties, and ultimately, no party outbid TH Holdco.[7] Appellant 85 Flatbush Mezz LLC's Opening Brief at 4.

---

[7] As background, JLL, the Debtors' broker, conducted extensive marketing of the Property, initially during the Fall of 2021 (where the highest indication of interest was $86.5 million) and again after the Disclosure Statement Order was entered in May 2022. Debtors' Opening Brief at 11, 12 and 45. And, although the TH Holdco Plan allowed for others to bid at an auction set to occur in August 2022 (including Mr. Hagler), as of the Confirmation Hearing, the marketing process had only revealed one person (Mr. Hagler) willing to bid higher than TH Holdco's credit bid. Ultimately, no party submitted a bid by the bid deadline. Appellant 85 Flatbush Mezz LLC's Opening Brief at 4.

Since there is no evidence in this record that suggests that the Bankruptcy Court committed a clear error of judgment in the conclusion it reached in issuing a finding under §363(m), based upon the weighing the relevant facts, and there is no evidence that would provide this Court with a definite and firm conviction that a mistake has been committed, the Bankruptcy Court's entry of the Confirmation Order must be affirmed.

## IV. The Bankruptcy Court Correctly Valued TH Holdco's Secured Claim and Found that a Market Test is the Best Method to Establish the Property's Value.

The Debtors wrongly contend that no determination of the Property's value was made at an evidentiary hearing at or prior to the Confirmation Hearing. As further detailed above and below, the Confirmation Hearing was an evidentiary hearing and the marketing an auction process implemented through the TH Holdco Plan was sufficient to establish the Property's value.

As established by the clear binding direction from the United States Supreme Court in cases such as *203 N. LaSalle* and *RadLax*, a market test is the best indication of value. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 644 n. 2 (2012) ("The ability to credit-bid helps to protect a creditor against the risk that its collateral will be sold at a depressed price. It enables the creditor to purchase the collateral *for what it considers the fair market price* (up to the amount of its security interest) without committing additional cash to protect the loan.") (emphasis added); *Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 457(1999) (acknowledging "the best way to determine value is exposure to a market" rather than a determination by a bankruptcy judge). There is no requirement that the value of the Property be established by a testifying expert or otherwise.

In *RadLAX*, the debtors' plan proposed a sale of all assets through a public auction that specifically prohibited credit bidding. *Id.* at 642. In reaffirming credit bidding as a key bankruptcy protection, the Supreme Court denied the debtors' attempt to hold a cramdown auction that did not

include the secured creditor's right to credit bid. *RadLAX* at 647 and n. 2; *see also In re The Free Lance-Star Publ'g Co. of Fredericksburg, VA*, 512 B.R. 798, 804 (Bankr. E.D. Va. 2014) ("The right to credit bid under 363(k) of the Bankruptcy Code is an important safeguard that insures against the undervaluation of the secured claim at an asset sale."). *RadLAX* ensures that secured creditors – such as TH Holdco – retain one of the most important protections afforded to them in the Chapter 11 process: the right, when their collateral is being sold, to bid up to the full amount owed including post-petition interest and to obtain the collateral.

In *LaSalle*, the issue before the Supreme Court was whether the Bankruptcy Code allows for a "new value" exception to the absolute priority rule and, if so, what is required to meet that exception. *Id.* at 442. The Supreme Court held that, despite the new value exception to the absolute priority rule, a plan may violate absolute priority if "old equity acquire[s] or retain[s] the property interest without paying full value." *Id.* at 457. The only way to ensure that old equity had paid full value was to subject the sale to a *market test*. *Id.* at 454-55. In so holding, the Court emphasized that the "best way to determine value is exposure to a market." *Id.* at 457. This is especially true in the context of the Bankruptcy Code's narrowing of "occasions for courts to make valuation judgments," where "some form of market valuation may be available" – as is the case here with at least 3 bids from the Fall of 2021 and the bids of TH Holdco and Mr. Hagler at the Confirmation Hearing. While the TH Holdco Plan is not a new value plan, the principle laid out by the Supreme Court in *203 N. LaSalle*, that any asset to be sold in the bankruptcy case needs to be market tested, and that a market test is more persuasive than appraisal testimony, applies here to the value of the Property.[8]

---

[8] The Debtors cite three cases for the proposition that when a property valuation is contested, the Court must hold an evidentiary hearing: *D.A.N. Joint Venture v. Deoki*, 98 Civ. 233 (LMM), 1999 U.S. Dist. LEXIS 12974 (S.D.N.Y. Aug. 20, 1999); *In re Gross*, No. 09-21095, 2022 WL 682932 (Bankr. D.N.J. Mar. 7, 2022); *In re Oliver*, 183 B.R. 87 (Bankr. W.D. Pa. 1995). Again, the Debtors' cases do not support the proposition claimed. *Deoki* is not even in the

Subsequent decisions from this District have followed the Supreme Court's guidance and recognized that the best and truest indication of value is the behavior in the marketplace and the sale process itself. *See, e.g.*, *In re Chemtura Corp.*, 439 B.R. 561, 586 n. 106 (Bankr. S.D.N.Y. 2010) ("the marketplace is often as good or better an indication of a company's value than expert testimony alone would be"); *In re Chrysler*, 405 B.R. 84, 98 (Bankr. S.D.N.Y. 2009) ("the true test of value is the sale process itself"); *In re Granite Broad. Corp.*, 369 B.R. 120, 140-43 (Bankr. S.D.N.Y. 2007) (noting that what a willing purchaser is willing to pay "'typically trumps all other[ ]' indications of value.'"); *In re Champion Enterprises, Inc.*, 2012 WL 3778872, at *35 (Bankr. D. Del. Aug. 30, 2012) ("A market test is the best evidence of a company's value at a given point in time.").

A market test was conducted here. JLL, a well-known national broker, whose retention was approved by the Bankruptcy Court and supported by all key constituencies in the case, marketed the Property for over two months in the Fall of 2021 and then over the months of June and July 2022. Confirmation Hr' Tr.; JA-003604-003694. JLL received bids ranging from $80 million to $86.5 million in 2021 (before the debt traded hands to TH Holdco at the end of January 2022). Debtors' Opening Brief page 12. Thereafter, TH Holdco submitted its credit bid, with a total value of $94 million, and at the Confirmation Hearing, the Bankruptcy Court found a rival bidder, Mr. Hagler, was "prepared to spend over $96 million for an equity interest shared with

---

context of a bankruptcy proceeding; rather, there the secured creditor sought a deficiency claim against the debtor under state law. *Id.* at *5. The Court determined that the only time an evidentiary hearing was required was when there were "two conflicting real estate appraisals", which is not the case here. *Id.* at *5-*6. In *In re Gross*, the debtors challenged their own appraisal in an attempt to avoid a lien on their home and exempt greater value than the equity therein. 2022 WL 682932 at *1. The case makes clear that the issue of value and resolution thereof is particular to §522 considerations. *Id.* at *2-*3 This issue is not relevant here. In *In re Oliver, the Court* held that a secured creditor bears the burden for proving it is oversecured such that the debtor should pay out additional cash to the creditor. 183 B.R. at 92. That case is also inapplicable here, as TH Holdco is not seeking further cash from the Debtors and would presumably be required to prove up its remaining claim if it sought a deficiency from guarantors. Contrary to the Debtors' assertions, none of these cases say that value needs to be determined by expert witness appraisal testimony rather than a market test or actual bids.

others in the property." Confirmation Hearing Tr.; JA-003664. When the Debtors' counsel tried to say that Mr. Hagler's bid was not indicative of the value of the Property, the following discussion was had between the Court and Ms. Schwartz as one of the Debtors' counsels:

> THE COURT:   . . . he's getting equity under his proposal, --
>
> MS. SCHWARTZ:  Right.
>
> THE COURT:  and I guess the Mezzanine Debtor, right, the parent debtor?
>
> MS. SCHWARTZ:  Yes.  He's being admitted as a member under that – the operating agreement of the Mezzanine Debtor.
>
> THE COURT:  All right,  And the Mezzanine Debtor owns only, right, the hotel debtor and the resident debtor.  It doesn't own other hotels, for example or other assets?
>
> MS. SCHWARTZ:  No, Judge.
>
> THE COURT:  So, the only basis for the basis for the value of the equity on which Mr. Hagler is buying only a piece of is – is the excess over what's owed to creditors of those other two operating debtors, and he's paying $96.75 million dollars for that.  He's obviously disagreeing with the $72 million appraisal and putting his money where his mouth is.

*Id*. at JA-003665.  The Bankruptcy Court then had a back and forth with Mr. Griffin, counsel Mr. Hagler:

> THE COURT:  They [the Secured Creditor] own a claim that is in the dollar amount of X and they have the right to bid that full claim, including post-petition interest.  The Supreme Court established that in the RadLAX case.
>
> MR. GRIFFIN:   Understood, Your Honor, but subject – subject to the value of the collateral.
>
> THE COURT:  No, not subject to the value of the collateral.  They set that by their bid. That the whole purpose of credit bidding as discussed by the Supreme Court in RadLAX is that the claim carries the right to credit bid in the full amount of the claim, including post-petition interest, because the buyer with that claim has that right, and it can only be limited in very extraordinary circumstances under 363(k)'s for cause standard.[9]

---

[9] The Court overruled the Debtors' 363(k) Disqualification Motion at the Confirmation Hearing as evidenced by a separate order of the Court dated July 15, 2022.  [Dkt.  284; *see also* JA-003689].  The Debtors did not appeal that separate order and it is final, binding and law of the case.

*Id.* at JA-003666-003667. Given these exchanges, it is clear the that Bankruptcy Court was focused on assessing the Property's value, and that the Bankruptcy Court did so appropriately under existing Supreme Court precedent of considering actual market bids.

If the Debtors truly disagreed with TH Holdco on the Property's value, they should have presented additional evidence to support their own valuation thesis. For example, the Debtors could have presented their appraiser to testify, or they could have requested to submit their appraisal [Dkt. 230; JA0 002921-003094] (the "Appraisal") into evidence to preserve that objection on appeal. *See e.g.*, *In re Carmania Corp. N.V.*, 156 B.R. 119, 120 (Bankr. S.D.N.Y. 1993) (where the secured creditor and the debtor each submitted appraisals into evidence and rigorously cross-examined each others' appraisers, which led to the court to completely disregard one of the appraiser's appraisal and testimony because of the "pervasive disregard of reason in pursuit of a result"). But the Debtors did not proffer such evidence, and that is likely because they knew the Appraisal was not a good indication of value.

In *In re Carmania*, the court rejected the testimony of the appraiser in its entirety because the Court did not believe the appraiser believed "much of what he testified to" and the "objective evidence, much of which he provided, contradicted and undermined his assumptions, many of which were so 'implausible on [their] face that a reasonable factfinder would not credit' them." *Id.* Here, the Confirmation Hearing record shows that almost all parties agree that there are serious issues with the Appraisal. First, the Debtors' counsel in these cases admitted that, "I tend to agree that appraisals are useless, are more predicated upon what a third-party will pay for the property is a better indicative of value. Confirmation Hearing Tr.; *JA-003676 (73:21-23)*. Then Mr. Griffin, attorney for Mr. Hagler, the rival bidder, acknowledged that the appraisal was "stale", to which the Court responded, "I agree. I agree" *Id.* at JA-003666. The Bankruptcy Court added:

"I think it's obvious. . . . [I]t's like the old country song, are you going to believe me or your lying eyes? I believe the money he is putting up [over $96 million]." *Id.*. Lastly, the Bankruptcy Court had before it the §363(k) Declaration, which provided a detailed discussion and analysis of the flaws in the Appraisal. And while Mr. Famularo's declaration was not submitted in any expert capacity, Mr. Famularo is clearly well-versed in commercial real estate matters. Ultimately, Mr. Famularo's conclusion, that the Appraisal is not credible, is persuasive. Accordingly, the Bankruptcy Court appropriately did not give weight to the stale and unsound Appraisal, and instead correctly looked to other facts in evidence, including those established through the market test, to discern the Property's value.

Contrary to the Debtors' assertions, Mr. Famularo's testimony at the Confirmation Hearing proves it was an evidentiary hearing. Mr. Famularo was cross examined by both Debtors' counsel and counsel for the rival bidder, Mr. Hagler. Confirmation Hearing Tr.; JA-003646003656 , and the Court took judicial notice of a number of other documents in the record, including the two other declarations submitted by Mr. Famularo. *Id.* at JA-003658. The Debtors' failure to present evidence to support their positions does not change the fact that the Bankruptcy Court had a sufficient record on which to make reasoned findings of fact.

The Bankruptcy Court appropriately based its factual findings on actual bids by bidders putting their "own money where their mouths are". *Id.* at JA-003665 ("He's obviously disagreeing with the $72 million appraisal and putting his money where his mouth is."). The Bankruptcy Court approved the Sale and Bid Procedures which authorized JLL to complete a second marketing process for the Property in an attempt to generate competing bids at the auction. *See* JA-002390-002451 and JA-001246-001564. Following *203 N. LaSalle*, the Court appropriately derived the Property's value from the public auction process provided for in the TH Holdco Plan, with TH

Holdco's credit bid serving as the baseline bid. The fact that no new bids were submitted by the bid deadline shows that the JLL marketing process reflects a thorough market test for the Property and the result confirms that TH Holdco's credit bid is the best evidence of the Property's valuation. The Bankruptcy Court properly recognized this and as such, the Confirmation Order should be affirmed.

## V.    The Debtors' Plan Was Patently Unconfirmable and Therefore the Bankruptcy Court Did Not Violate 11 U.S.C. Section 1129(c).

The Debtors cite §1129(c) of the Bankruptcy Code to support their position that the Bankruptcy Court should have given creditors the opportunity to consider both the TH Holdco Plan and the Debtors' second amended plan [Dkt. 268; JA-003398-003450] (the "Debtors' Plan"). They also argue that because the TH Holdco Plan is a liquidating plan, the Debtors' Plan, which is a plan of reorganization, is better. These arguments fail.

First, §1129(c) of the Bankruptcy Code provides that the court shall consider the preferences of creditors in determining which plan to confirm *only if* the requirements of §1129(a) and (b) are met with respect to more than one plan. 11 U.S.C. § 1129(c) (requiring that "the court may confirm only one plan" even if more than one plan is confirmable, and in deciding which of the competing plans to confirm, the court "shall consider the preferences of creditors and equity security holders"); *see also Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 117 (2d Cir. 2014) ("Both the *debtor's plan* and *any competing plan* must meet various mandatory provisions and may meet various discretionary provisions.") (emphasis added). The Debtors' Plan came nowhere near satisfying the requirements of §1129(a) or (b) and, in fact, the Debtors never even reached the point where their plan or disclosure statement were properly before the Bankruptcy Court, let alone ready for consideration by creditors. Therefore, the Debtors have no basis to invoke §1129(c).

During the final months of their Chapter 11 Cases, the Debtors repeatedly filed emergency motions to shorten notice, in a thinly veiled attempt to disrupt TH Holdco's confirmation process, and in an attempt to get their half-baked plans before the Court for approval. The Bankruptcy Court, however, correctly found that the Debtors' Plan did not, on its face, meet the required confirmation standards.

The Debtors' Plan was not confirmable for several reasons. Primarily, the Debtors' Plan was not confirmable because it denied TH Holdco its credit bid rights. It also incorrectly fixed the value of TH Holdco's claim at approximately $72 million. This value was at odds with the value already agreed to by the Debtors in the Agreed Final Cash Collateral Order, wherein the Debtors agreed that the principal amount of the claim was approximately $85 million, the claim would accrue default interest and the claim would "continue to accrue interest and additional charges pursuant to and under the [Senior] Loan Documents." The Debtors further "acknowledge[d] and agree[d] that the Lender has a valid and enforceable lien on the Property." Dkt. 64 at JA-000074-000075. Thus, the Debtors' Plan was unconfirmable because it did not provide for sufficient amounts to pay off TH Holdco's Secured Claim (including post-petition interest and attorneys' fees) or any of the other allowed or administrative claims of the estates.

Additionally, the Debtors' Plan was unconfirmable because it provided for a recovery for the Mezzanine Lender, before TH Holdco was paid in full under the terms of the ICA, in violation of the absolute priority rule. The Debtors also argue that "[t]he TH Holdco Plan does not provide for payment to insider unsecured creditors or payment to the Mezzanine Lender, wipes out the Debtors' principals equity and liquidates the Debtors." *See* Debtors' Opening Brief at 51. This statement totally disregards the Bankruptcy Code's rules of priority. *See e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017) (citing §726(a)(6)) ("The Code places equity holders at the

bottom of the priority list. They receive nothing until all previously listed creditors have been paid in full."). The Debtors' Plan cannot take away TH Holdco's post-petition interest and credit bid rights so that it may provide value for subordinated mezzanine level lenders, out of the money insider claims and equity.

The Debtors' disclosure statement (JA-000701-000761) was similarly flawed as it did not provide sufficient information to support the Debtors' improper calculation of the TH Holdco Secured Claim, and importantly, it did not provide sufficient information on why the Debtors' plan was confirmable and feasible.

At the Confirmation Hearing, the Bankruptcy Court said the following about the Debtors' Plan:

> It could be a cramdown by forcing the lender to take cash. I think that's contrary to RadLax.
>
> So the plan doesn't work. Plus … it's giving value to the Mezzanine Lenders notwithstanding the subordination agreement. It just doesn't compute.
>
> And in addition, as far as Mr. Hagler is concerned, and the debtors, they have a much better option. They can bid at the auction . . .
>
> there are far fewer legal issues between Mr. Hagler getting what he wants under the TH Holdco plan than under the debtor's plan, which has, I think, insurmountable confirmation issues.

Confirmation Hearing Tr. at JA-003667-003668. The Court added:

> implicitly I'm going to deny the motion for expedited treatment of the debtor's request for approval of the disclosure statement and for their second amended Chapter 11 plan and the second amended Chapter 11 plan of the debtors. I am doing that primarily because I don't believe the second amended plan is confirmable, but even if it were arguably confirmable, it should not -- it doesn't warrant putting it on a parallel track with the plan that I've just confirmed. What I'd like to do is simply deny the motion for expedited treatment. So if for some reason something falls apart, you can schedule a hearing on the disclosure statement on regular notice.

*Id.* at JA-003688-003689 (emphasis added). Given these fundamental issues, the Bankruptcy Court correctly recognized that Debtors had no rival confirmable plan to consider.

The Debtors complain that the Bankruptcy Court failed to provide them with an opportunity to confirm their own plan. But there is nothing in the Bankruptcy Code that requires the Bankruptcy Court or the Debtors' creditors to wait indefinitely for the Debtors to propose a confirmable plan. The Debtors' exclusivity expired on in January 2022 and thereafter, TH Holdco properly filed a plan and disclosure statement for consideration by the Court and creditors. The Debtors filed one unconfirmable plan just before the April 6 Hearing and then another unconfirmable plan right before the Confirmation Hearing – they had their opportunities to propose a confirmable plan. Therefore, because exclusivity expired and the Debtors did not have a viable rival plan, the Bankruptcy Court properly considered and confirmed the TH Holdco Plan.

Debtors cite to *In re Holley Garden Apts., Ltd.*, 238 B.R. 488, 496 (Bankr. M.D. Fla. 1999) for the proposition that a reorganizing plan is preferable to a liquidating plan. However, *Holley* also states that "[t]he first step at a confirmation hearing on competing plans is to determine whether one or more of the plans are confirmable." *Id*. at 493 (citing *In re Burton Securities*, 148 B.R. 478, 480 (Bankr. S.D. Tex. 1992)). If more than one plan is confirmable, the court should then analyze the following: (1) the type of plan; (2) the treatment of creditors and equity security holders; (3) the feasibility of the plan; and (4) the preferences of creditors and equity security holders. *Holley*, 238 B.R. at 493. Since the Debtors' plan was not confirmable, these additional steps need not be reached.

Nonetheless, *Holley* states that "[a] reorganization plan is *usually* preferable to a liquidation plan." *Id.* at 495 (emphasis added) (citing *In re Oaks Partners, Ltd.*, 141 B.R. 453, 465 (Bankr. N.D. Ga. 1992)). While one policy of chapter 11 is to successfully rehabilitate debtors, liquidating

plans can be preferable to reorganization plans where one plan is more feasible than the other, and ultimately, a court "should court should confirm the plan that provides better treatment for the creditors and equity security holders." *In re Farwest Pump Co.*, 621 B.R. 871, 898 (Bankr. D. Ariz. 2019).

Importantly, under either the TH Holdco Plan or the Debtors' Plan, the Property will be operated as a hotel and/or a residential condo project, but not liquidated. So the Debtors' attempt to draw a distinction between a document entitled a reorganization plan versus a liquidation plan is not meaningful in this fact pattern.

In sum, the TH Holdco Plan was the only confirmable plan before the Bankruptcy Court and these real estate cases were pending over 18 months by the time the Confirmation Hearing was held. Thus, there is no need to consider the Debtors' arguments on this point.

For the above reasons, and because there is no evidence that would provide this Court with a definite and firm conviction that the Bankruptcy Court committed a mistake in entering the Confirmation Order under the circumstances, this Court should affirm the Confirmation Order and dismiss this appeal.

## CONCLUSION

Appellee respectfully submits that the Confirmation Order should be affirmed.

Dated: September 9, 2022
New York, New York

**DENTONS US LLP**

/s/ Lauren Macksoud
Lauren Macksoud
Sarah M. Schrag
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Fax: (212) 768-6800
Email: lauren.macksoud@dentons.com
         sarah.schrag@dentons.com

-and-

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Bankruptcy Procedure 8015(a)(7), the undersigned certifies that this opening brief complies with the type volume limitation and that this opening brief contains 12,322 (excluding the cover page, tables, signature blocks and required certificates) as counted by the computer program used to prepare this opening brief.

DATED: September 9, 2022

**DENTONS US LLP**

/s/ Lauren Macksoud
Lauren Macksoud
Sarah M. Schrag
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Fax: (212) 768-6800
Email: lauren.macksoud@dentons.com
   sarah.schrag@dentons.com

-and-

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

US_ACTIVE\15799341\000018\122188079\V-11